STATE OF NORTH CAROLINA v. RALPH RANKIN

No. 346A84

(Filed 8 January 1985)

**Constitutional Law § 31; Witnesses § 10— pretrial motion to compel attendance of witness—denial as violation of constitutional right to compulsory process**

Defendant was effectively denied his constitutional right to compulsory process in his retrial for first-degree sexual offense by the trial court's denial of his pretrial motion pursuant to G.S. 15A-805(a) to compel the attendance of a proposed witness on grounds that (1) no affidavits were submitted as to why the witness should be brought to court, (2) the witness did not testify at de-

fendant's prior trial, and (3) the witness's presence was requested at a late date, since the statute does not require that affidavits be submitted to show the "good cause" requirement of the statute, a witness need not have testified in a previous trial in order to be subject to production as a witness for any other trial, and the motion should not have been denied without giving defendant an opportunity to show the "good cause" requirement of the statute and to advance substantial reasons why the motion was not filed until the day before trial.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MARTIN dissenting.

APPEAL by defendant from *Judge Hal H. Walker* at the 27 February 1984 Criminal Session of GUILFORD County Superior Court.

Defendant, Thomas Braswell and George Totten were indicted for common law robbery and first-degree sexual offense upon Jerry Dean Franklin. These offenses were alleged to have been committed while the men were confined in a four-man cell in Guilford County Jail on 21 April 1981.

This is the third time defendant has been tried upon the charge of first-degree sexual offense. At his first trial, defendant and codefendant Braswell were tried upon charges of first-degree sexual offense and robbery. At this trial, there was a mistrial because the jury was unable to reach a verdict on either charge. At the second trial, Rankin was tried alone while the charges were still pending against Braswell and Totten. At that time, counsel for Braswell and Totten notified defendant's counsel that they had advised their clients to claim the fifth amendment privilege if called to testify in Rankin's trial. Defendant attempted to have Braswell ordered to testify but the trial judge declined to do so. At the second trial, defendant denied that he had committed either of the charged offenses. The jury returned verdicts of guilty of first-degree sexual offense and not guilty of robbery.

Following Rankin's conviction of first-degree sexual offense, Totten and Braswell pleaded guilty to the lesser included offense of second-degree sexual offense. Thereafter this Court granted defendant a new trial in an opinion reported at 306 N.C. 712, 295 S.E. 2d 416 (1982).

At defendant's third trial, the proceeding which is currently before the Court for review, the victim of the alleged assault, Jerry Franklin, testified that Braswell and Totten held him on the floor of the jail while Defendant Rankin put grease on his rectum and had forcible anal intercourse with him. Franklin reported this incident to the jailers when the cells were opened for lunch.

Dr. Wallace R. Nelms, admitted as a medical expert, testified that he examined Jerry Franklin on 3 April 1981 and that he observed a greasy substance and bloodstains on Franklin's underwear. He further testified:

I concluded that, you know, there was no sign of venereal warts there [which would have indicated involvement with numerous homosexual partners]. There was obvious trauma to the outside of the rectum. He had two fresh external hemorrhoids that looked like they were there from trauma, not just because all of a sudden he developed hemorrhoids; and the anus appeared traumatized, means bruised or battered . . . without seeing the warts and the obvious signs of trauma, I was impressed that this young man probably had been assaulted.

From my experience as a physician doing pelvic exams and doing genital exams, I would say that the thing that came in my mind as soon as I saw the hair [found in the victim's rectum] this looks like a black pubic hair.

Dr. Nelms also gave testimony which tended to corroborate Franklin's trial testimony.

The State also offered evidence tending to show that sperm was found in Franklin's anal canal and there was other evidence which tended to corroborate the testimony of the State's witnesses.

Defendant testified that he had not assaulted Franklin in any manner; that Franklin had "set him up" in order to avoid going to jail on pending robbery charges.

John Carson testified for the defendant and stated that Franklin had admitted to him that he had faked the alleged assault.

Larry Wayne Poole, who had been in the Guilford County Jail in April of 1981, testified that he had discussed with Franklin how he might arrange a fake assault as a way for Franklin to avoid imprisonment for his pending robbery charges.

The jury returned a verdict of guilty of first-degree sexual offense and defendant was sentenced to life imprisonment. He appeals to this Court pursuant to N.C.G.S. § 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Isham B. Hudson, Jr., Special Deputy Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Malcolm Ray Hunter, Jr., Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the trial court's denial of his pretrial motion to produce and compel the attendance of a proposed witness, George Totten.

On 27 February 1984, the day before defendant's case was calendared for trial, defense counsel filed the following motion:

> NOW COMES THE DEFENDANT, by and through his attorney, and hereby moves the Court pursuant to 15A-805 to secure the attendance of George Totten, Larry Poole, Bobby James Stanley, Anthony G. Clements and Robert Powell at the trial of the defendant on February 27, 1984. As grounds thereof, he respectfully shows unto the Court the following:
>
> 1. That based upon the investigation by the defendant's attorney, the above-named individuals are deemed to be necessary, essential and material to the defendant's case.
>
> 2. That their attendance is essential to insure the defendant's right to a fair and impartial trial as per the United States and North Carolina Constitution.

At the hearing on defendant's motion, the following dialogue took place between the trial judge and defense counsel:

> THE COURT: All right.
>
> MR. MURPHY: Well, Your Honor—

THE COURT: I will allow and require habeas corpus ad testificandum as to Larry Poole and Bobby Stanley. The court finds that an affidavit was filed on the 27th of February, 1984, of Anthony Clements, but it does not relate to the trial of this matter.

MR. MURPHY: If Your Honor please —

THE COURT: And as to Robert Powell and George Totten, the court finds that no affidavits are submitted as to why they should be brought to court at this time; and the court finds that they were not witnesses in the previous trial and —

MR. MURPHY: If Your Honor please —

THE COURT: Just a minute!

MR. MURPHY: Yes, sir.

THE COURT: — and that their presence was requested at a very late date. The court denies the motion to secure witnesses as to Totten and Powell and Clements. EXCEPTION NO. 1

All right. Now, what's your next motion?

MR. MURPHY: If Your Honor please, may I be heard before we proceed?

THE COURT: I have already ruled on that.

MR. MURPHY: Yes, Your Honor. I would like for the record to reflect that it is the defense's contention that the motion was filed in apt time; that apt time means that it is filed in appropriate time, but I also ask the record to reflect that in 15A-805, there is no mention about anything having to be filed before time.

THE COURT: I have denied the motion —

MR. MURPHY: Yes, sir, Your Honor.

THE COURT: — as to those —

MR. MURPHY: I would —

THE COURT: Just a moment! I have denied the motion as to those EXCEPTION NO. 2 and allowed it as to three of them; and I will request that it be issued at this time and I will sign it.

MR. MURPHY: Your Honor, may I please be allowed to continue reading into the record—

THE COURT: What are you reading from? What was that that you are reading from?

MR. MURPHY: 15A-805.

THE COURT: I have a copy of that, and the court will take judicial notice of it.

MR. MURPHY: Thank you.

THE COURT: What's your next motion?

North Carolina General Statute § 15A-805 provides, in pertinent part, as follows:

(a) Upon motion of the State or any defendant, the judge of a court in which a criminal proceeding is pending must, for good cause shown, enter an order requiring that any person confined in an institution in this State be produced and compelled to attend as a witness in the action or proceeding.

As indicated by the language of the official commentary,[1] we find the procedure for obtaining habeas corpus ad testificandum to be much more complicated than the procedure pursuant to which defendant's motion was filed. *See* N.C.G.S. § 17-41 *et seq.*

Defendant's motion followed the language of N.C.G.S. § 17-42 which provides for the application for habeas corpus ad testificandum. Obviously his written motion was not sufficient to meet the "good cause" burden imposed by N.C.G.S. 15A-805. Nevertheless, that statute does not require that the motion to produce and com-

---

1. Official Commentary—This section replaces the old "habeas corpus ad testificandum" with a simple motion and order for the production of a prisoner (or other person confined in an institution). If a conflict arises between two cases, and it cannot be resolved at the trial level, provision is made for resort to the appellate division. The statutes in Article 8, Chapter 17 of the General Statutes are left untouched because of their preexisting applicability to other proceedings.

pel the attendance of witnesses be in writing, that it be made within a certain time, nor does it specify any particular method by which the movant must state "good cause" for the production of the person to be offered as a witness.

In addition to the statutory provisions of N.C.G.S. § 15A-805(a), the United States Supreme Court has recognized a defendant's right to compel the attendance of witnesses as a fundamental constitutional right.

In *Washington v. Texas*, 388 U.S. 14 (1967) the United States Supreme Court reversed defendant's murder conviction because the state law precluded an alleged codefendant from testifying for defendant. In holding that defendant was denied his sixth amendment right to compulsory process, the Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* at 19.

It appears that the trial judge denied defendant's motion to produce the witness Totten on the grounds that (1) no affidavits were submitted as to why the witness should be brought to court; (2) the witness did not testify at the previous trial; and (3) the witness's presence was requested at a late date.

Certainly the statute does not *require* that affidavits be submitted to show the "good cause" requirement of the statute. Neither can we find viable reason why a witness must have testified in a previous trial in order to be subject to production as a witness for any other given trial. We do recognize, however, that a trial judge has the duty to supervise and control the course and conduct of a trial, and that in order to discharge that duty he is invested with broad discretionary powers. *Shute v. Fisher*, 270 N.C. 247, 154 S.E. 2d 75 (1967).

A late filed motion might delay the course of a trial and invite dilatory tactics by other parties to litigation. Therefore in instant case it was incumbent on defendant to show substantial reasons why his motion to produce and compel the presence of the witness Totten was not filed until the day before the trial was to commence. Our examination of this record discloses, however, that defendant's motion was denied without permitting him to show the "good cause" requirement of the statute or to advance any reasons, if any he had, why the motion was made at the eve of the trial. For this reason, under the particular facts of this case, we hold that defendant was effectively denied his right of compulsory process.

In considering whether the violation of a constitutional right constitutes prejudicial error, we must determine whether the error was "harmless beyond a reasonable doubt." *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972). We cannot say that the failure to produce and compel the attendance of the eyewitness to the alleged crime was harmless error beyond a reasonable doubt and therefore there must be a

New trial.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MARTIN dissenting.

I respectfully dissent. On 12 September 1984 the state filed a motion in this appeal asking this Court to take judicial notice of certain records of the North Carolina Department of Correction. Ruling on the motion was reserved until the determination of the appeal.

The records in question indicate that George Totten was not in prison at the time the motion for his production as a witness was made by defendant. According to the affidavit of the manager of combined records of the Department of Correction, Totten was released from prison on 28 January 1984. The documents verify this affidavit by recording the release date of Totten as 28 January 1984. The motion to secure the attendance of Totten was made on 27 February 1984. These records were certified on 12

September 1984. When these records are considered as evidence (there is no evidence to the contrary), the failure of the trial judge to allow defendant's motion that Totten be produced as a witness could not be prejudicial error. If the trial judge had ordered that Totten be produced as a witness by the Department of Correction, it would have availed the defendant naught, because Totten was not there to be produced as a witness.

So the determining question is whether we should take judicial notice of the records of the Department of Correction. The Department of Correction was duly created by the legislature. N.C. Gen. Stat. § 143B-260 (1983). It is an agency of the state. *Pharr v. Garibaldi*, 252 N.C. 803, 115 S.E. 2d 18 (1960). The Department is required to provide the necessary custody and supervision of criminal offenders. N.C. Gen. Stat. § 143B-261 (1983). In order to carry out this duty, it is essential that the Department keep accurate records of when prisoners are received and discharged from custody. The records in question are such documents. They are public records within the meaning of N.C.G.S. 8C-1, Rule 803(8) (Cum. Supp. 1983). *See* 1 Brandis on North Carolina Evidence § 153 (1982). The courts may take judicial notice of the adjudicative facts contained in public records. *Utilities Comm. v. Southern Bell Telephone Co.*, 289 N.C. 286, 221 S.E. 2d 322 (1976); 1 Brandis, *supra*, §§ 11, 13; N.C. Gen. Stat. § 8C-1, Rule 201 (Cum. Supp. 1983). Judicial notice may be taken at any stage of the proceeding. N.C. Gen. Stat. § 8C-1, Rule 201(f). This Court should allow the state's motion that it take judicial notice of the records in question.

Assuming the defendant could have established "good cause" for the issuance of an order by the trial judge for the production of Totten by the prison authorities, the failure of the trial judge to issue such order did not prejudice defendant in this case. If error, it was harmless beyond all reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (1983). The state has carried its burden to show that any error by the trial judge was harmless beyond a reasonable doubt. Therefore, I find no legal reason to require this case to be tried a fourth time.