STATE v. NORMAN

[331 N.C. 738 (1992)]

---

STATE OF NORTH CAROLINA v. JACOB A. NORMAN

No. 475A90

(Filed 25 June 1992)

1. **Homicide § 253 (NCI4th)— murder—premeditation and deliberation—evidence sufficient**

There was sufficient evidence of premeditation and deliberation to survive a motion to dismiss in a non-capital first degree murder prosecution where defendant said that, as he was arguing with his wife, he remembered what a friend had told him about his son's passing out after holding his breath and decided to choke his wife until she passed out, and sufficient evidence of intent to kill in the strangling of his wife, a statement

by the victim that defendant would kill her if her son left the room, and her plea with defendant to let her write a letter to her son before he killed her.

**Am Jur 2d, Homicide §§ 52, 63 et seq.**

**Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation" as elements of murder in the first degree. 18 ALR4th 961.**

**Presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.**

2. **Evidence and Witnesses § 765 (NCI4th) — murder of spouse — pictures and letters involving other women — admissible**

The trial court did not err in a non-capital first degree murder prosecution in which defendant was accused of strangling his wife by allowing the prosecutor to ask several questions on cross-examination concerning pictures of nude or partially nude women found in defendant's briefcase and a letter from another woman also found in defendant's briefcase. Defendant had testified that he loved his wife and had not intended to kill her and opened the door to questions about matters which show that he did not love his wife, such as affairs with other women. Defendant answered these questions in the negative and it is not clear that he was prejudiced.

**Am Jur 2d, Evidence § 269; Homicide §§ 377-379.**

Justice LAKE did not participate in the consideration or decision of this case.

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Owens, J.*, at the 19 March 1990 Criminal Session of Superior Court, TRANSYLVANIA County, upon a jury verdict of guilty of first degree murder. Heard in the Supreme Court 15 March 1991.

The defendant was tried for first degree murder in a case in which the State did not seek the death penalty. The State's evidence showed that in November 1989, the defendant and his wife Sylvia Norman had been married for ten years and were living in Brevard. On 3 November 1990, Nicolas Norman, the six year old son of the defendant and his wife, was in his room of

**STATE v. NORMAN**

[331 N.C. 738 (1992)]

the Norman's house with a four year old cousin. Nicholas heard the defendant and Sylvia "fussing" and the couple then came into Nicolas' room.

The defendant told Nicolas to leave the room and close the door, at which time Sylvia told Nicolas not to leave because if he did the defendant would kill her. Nevertheless, Nicolas and his friend left the room and closed the door. Nicolas heard a sound like a "stomp" in his bedroom and went to the room but the door was closed. He heard his mother say, "[y]ou can kill me but let me write a letter to my son." It sounded to Nicolas like his mother was crying. He heard his father say "[n]o."

A dispatcher for the City of Brevard Police Department testified that between 6:00 p.m. and 6:30 p.m. on 3 November 1989, she received a call from a man who identified himself as Jacob Norman who said, "I'd like to report a murder." The caller said he had killed his wife by choking her. The police went to the defendant's home and found the body of Sylvia Norman who had died of strangulation.

The defendant testified that on the day his wife died, they were quarreling about an affair in which he had been involved and during which he had impregnated a woman. He said he had never seen her so upset. He testified that when she had become hysterical in the past he would hold her down until she became calm. This time when she continued to scream and fight, he remembered that a friend had told him that his son would hold his breath when he was angry until he passed out, at which time the child would start breathing again. He decided to choke his wife until she passed out. He thought she would start breathing again and he did not intend to kill her.

The jury found the defendant guilty of first degree murder. He appealed from the imposition of a life sentence.

*Lacy H. Thornburg, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, and Constance H. Everhart, Assistant Appellate Defender, for the defendant appellant.*

**STATE v. NORMAN**

[331 N.C. 738 (1992)]

WEBB, Justice.

[1] The defendant's first assignment of error is to the court's denial of his motion to dismiss the charge of first degree murder on the ground that the State failed to prove premeditation and deliberation or a specific intent to kill. Whatever the defendant's intent, there was substantial evidence that it was formed after premeditation and deliberation. The defendant said that as he was arguing with his wife, he remembered what a friend had told him about his son's passing out after holding his breath and the defendant decided to choke his wife until she passed out. This is evidence from which a jury could find the defendant formed the intent to kill his wife for some period of time before the killing. *See State v. Misenheimer*, 304 N.C. 108, 282 S.E.2d 791 (1981). It is also evidence from which a jury could find the intent was formed in a cool state of blood and not under the influence of a violent passion suddenly aroused by sufficient provocation. *See State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981). There was sufficient evidence of premeditation and deliberation to submit to the jury.

In determining whether there was sufficient evidence of intent to kill it is necessary to look at all the circumstances. The deliberate strangling of a person to death is some evidence that the strangler intended to kill. The defendant denied such an intent, but the jury did not have to believe this testimony. When this evidence is coupled with the statements of the victim that if her son left the room the defendant would kill her, and with her plea to the defendant to let her write a letter to her son before he killed her, there is sufficient evidence of intent to kill to submit to the jury. *See State v. Artis*, 325 N.C. 278, 384 S.E.2d 470, *death sentence vacated*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990); *State v. Cauley*, 244 N.C. 701, 94 S.E.2d 915 (1956). The statements of the victim were not the statements of the defendant, as to his intent, but they were evidence of what the victim thought was the intent of the defendant and the jury could consider this evidence.

The defendant's first assignment of error is overruled.

[2] The defendant contends, under his second assignment of error, that the court improperly allowed several questions by the prosecuting attorney. When the defendant testified, the prosecuting attorney asked him on cross-examination about several pictures which were found in his briefcase. The defendant identified one of the pictures, which the prosecutor described as a picture of a girl

"with her breast hanging out," as a picture of his brother's girlfriend. He identified three pictures of a nude woman as pictures taken at a club he had operated. The prosecuting attorney asked the defendant if he had been involved with this woman and the defendant denied that he had been so involved. The prosecuting attorney also questioned the defendant about a letter found in his briefcase from a Teresa Kolka in which Miss Kolka said, "[w]ell, I've been staying out of the candy, unfortunately," and "[y]es, I am still interested and I really enjoy pictures. I'll be waiting." The defendant denied he had ever been involved with Teresa Kolka.

The defendant says that the testimony which these questions were intended to elicit was irrelevant and should have been excluded under N.C.G.S. § 8C-1, Rules 401 and 402. He also says the probative value of this testimony was substantially outweighed by the danger of unfair prejudice and it should have been excluded under N.C.G.S. § 8C-1, Rule 403. The defendant also says this testimony was admitted to prove his character in order to show he acted in conformity therewith and was inadmissible under N.C.G.S. § 8C-1, Rule 404(b). Finally, the defendant says the specific instances about which the prosecuting attorney inquired were not probative of truthfulness or untruthfulness and should not have been admitted under N.C.G.S. § 8C-1, Rule 608(b). *See State v. Morgan*, 315 N.C. 626, 340 S.E.2d 84 (1986).

The defendant answered in the negative as to all the questions about which he now complains. It is not clear that he was prejudiced by these questions. The defendant had testified that he loved his wife and did not intend to kill her. This opened the door to questions by the State as to matters which would show the defendant did not love his wife, as evidenced by his affairs with other women. *See State v. Darden*, 323 N.C. 356, 372 S.E.2d 539 (1988). The defendant, by his testimony, made this subject relevant under Rule 401 and admissible under Rule 402.

This assignment of error is overruled.

No error.

Justice LAKE did not participate in the consideration or decision of this case.