STATE OF NORTH CAROLINA v. RANDALL RAY JOLLY

No. 487A90

(Filed 4 September 1992)

1. **Evidence and Witnesses § 860 (NCI4th) — hearsay — declarant's conflicting statements — admissible — issue of credibility**

    The trial court did not err in a noncapital homicide prosecution by admitting conflicting hearsay statements and allowing the jury to determine which was the most convincing where three witnesses testified that the victim had told them that defendant had shot at her during a highway chase, but the victim had testified at the probable cause hearing for that incident that she had not actually seen or heard shots during the chase. Prior testimony is itself hearsay evidence which is excepted from the hearsay rule by N.C.G.S. § 8C-1, Rule 804(b)(1). Where the hearsay statements of a declarant are conflicting, the conflict raises a question of credibility rather than reliability, and, when a declarant's conflicting hearsay statements have been determined to be excepted from the general prohibition against hearsay, the trial court need not subject the statements to any additional test for reliability before admitting them into evidence.

    **Am Jur 2d, Evidence § 1082; Witnesses §§ 929, 930, 933.**

2. **Evidence and Witnesses § 927 (NCI4th) — hearsay — right to confrontation — no prejudicial error**

    The trial court did not err by admitting two of three statements from a homicide victim concerning a previous incident with defendant where the two statements were made immediately after the incident and while the victim was still emotionally upset and fit squarely within the requirements of N.C.G.S. § 8C-1, Rule 803(2). The third statement was made the day following the event and did not fit within the excited utterance exception, but was harmless beyond a reasonable doubt because the same facts would have been properly before the jury in the absence of the testimony and there was ample evidence before the jury from which it could find defendant guilty of first degree murder.

    **Am Jur 2d, Evidence §§ 708, 716.**

STATE v̇. JOLLY

[332 N.C. 351 (1992)]

When hearsay statement as "excited utterance" admissible under Rule 803(2) of the Federal Rules of Evidence. 48 ALR Fed 451.

3. **Appeal and Error § 147 (NCI4th) — homicide — hospital admission notes — cross-examination of different witness — no objection — assignment of error waived**

A defendant in a homicide prosecution waived his right to assign error to the admission of testimony concerning notes taken upon his admission to a hospital prior to the crime where defendant's cross-examination testimony was substantially the same as the testimony to which he now assigns error.

**Am Jur 2d, Evidence §§ 494, 1103.**

4. **Evidence and Witnesses § 720 (NCI4th) — character evidence — erroneously admitted — not prejudicial**

There was no prejudicial error in a homicide prosecution from the admission of testimony regarding defendant's failure to spend time with his sons, testimony about statements by the victim, and testimony about the victim's marital situation because the evidence related facts that were not in dispute, was tangential and could not have affected the outcome of the trial in light of all the evidence that was properly introduced, did not implicate defendant, and could not have affected the outcome of the trial.

**Am Jur 2d, Appeal and Error §§ 797, 798.**

5. **Evidence and Witnesses § 959 (NCI4th) — homicide — statements of victim — state of mind exception — admissible**

There was no error in a homicide prosecution from the introduction of testimony by two witnesses that the victim had said that defendant would see her dead before he'd see her with anyone else and that she had said that there had been threats and that she felt they would be carried out. The testimony went directly to the victim's state of mind and tended to show that she was afraid of defendant, believed his threats, and would not have intended to reconcile with him or meet with him to engage in sexual activity.

**Am Jur 2d, Evidence §§ 497, 650.**

Exception to hearsay rule, under Rule 803(3) of Federal Rules of Evidence, with respect to statement of declarant's mental, emotional, or physical condition. 75 ALR Fed 170.

STATE v. JOLLY

[332 N.C. 351 (1992)]

6. **Homicide § 494 (NCI4th)— premeditation and deliberation— instructions—brutal and vicious circumstances of killing**

The trial court did not err in a noncapital first degree murder prosecution by giving an instruction which permitted the jury to infer premeditation and deliberation from the vicious circumstances of the killing where the State's evidence showed that defendant subjected the victim to constant psychological abuse prior to and including the day of her killing.

Am Jur 2d, Homicide §§ 508, 509.

Homicide: presumption of deliberation or premeditation from circumstances attending the killing. 96 ALR2d 1435.

7. **Evidence and Witnesses § 2228 (NCI4th)— murder—gunpowder residue test—reason test not performed—admissible**

The trial court did not err in a noncapital murder prosecution by admitting testimony from an investigator that no gunpowder residue tests had been performed on the victim because the investigator had no doubt that the victim had not handled a gun. The testimony was elicited on re-direct after the defendant had elicited on cross-examination that a paraffin test had not been performed and the witness was a trained law enforcement officer employed as a criminal investigator.

Am Jur 2d, Expert and Opinion Evidence § 300.

8. **Evidence and Witnesses § 263 (NCI4th)— cross-examination— defendant's desire for visit from young daughter in mental hospital—not de facto evidence of bad character**

The trial court did not err in a noncapital murder prosecution by allowing the State to cross-examine defendant concerning his desire to have his four-year-old daughter visit him when he was confined in a psychiatric ward. Although the prosecutor's questions may have suggested to the jury that defendant should have had more concern about the effect that such a setting might have on his young child, defendant was given the opportunity to explain his adamant desire to see his daughter and it cannot be said that the prosecutor's questions twisted his testimony into de facto evidence of bad character. Moreover, defendant had earlier testified that he had left the hospital without permission because his wife had not brought his daughter to visit him and the State was entitled to challenge this explanation by suggesting that the

defendant's desire to have his daughter visit him was unreasonable.

**Am Jur 2d, Evidence §§ 339, 340.**

9. **Criminal Law § 461 (NCI4th) — murder — prosecutor's argument — State's witness threatened — not supported by evidence — no intervention ex mero motu**

The trial court did not abuse its discretion in a noncapital murder prosecution by not intervening *ex mero motu* when the prosecutor asserted in closing arguments that a State's witness had been threatened and went on to assert an incorrect statement of law because the entire matter was collateral to the issue of defendant's guilt.

**Am Jur 2d, Trial § 640.**

10. **Criminal Law § 435 (NCI4th) — closing arguments — prior convictions — contemptuousness for law — intervention ex mero motu not required**

The trial court did not abuse its discretion by not intervening *ex mero motu* in a noncapital murder prosecution where the prosecutor argued that defendant's prior convictions demonstrated a contemptuousness for the law. Although the evidence of defendant's prior convictions was admissible only to impeach defendant's credibility and should not have been argued as substantive evidence of the crime charged, defendant failed to object to the testimony at trial and the prosecutor's prior statement in the argument that the convictions did not make defendant guilty served to lessen the impropriety of the subsequent argument.

**Am Jur 2d, Trial §§ 681, 682.**

11. **Criminal Law § 445 (NCI4th) — murder — closing argument — prosecutor's opinion — no error**

There was no error in a noncapital murder prosecution where the prosecutor argued that he knew of no problem between the defendant and a State's witness, then modified his argument after an objection to the effect that the evidence did not show that there was any problem between defendant and the witness as of the date of the murder. Although initially phrased in terms of what he knew, the prosecutor's argument did not place before the jury any prejudicial matter that was

unsupported by the evidence and the modified version of the argument was a fair characterization of the shortcomings of defendant's evidence.

**Am Jur 2d, Trial § 613.**

12. **Criminal Law § 959 (NCI4th) — murder — motion for appropriate relief on appeal — perjury of witness — no prejudice**

A motion for appropriate relief in the Supreme Court was denied where it was discovered after defendant's murder trial that a State's witness who had testified concerning defendant's admission interview to an alcohol detoxification program had not graduated from an accredited medical school and may have obtained his medical license by the use of forged documents. Any question as to the credibility of the witness was rendered moot by defendant's corroboration of that testimony; moreover, the witness was not tendered as an expert and did not render any medical opinions based upon his observations of defendant, and there was substantial additional evidence which tended to show that defendant acted with premeditation and deliberation.

**Am Jur 2d, Appeal and Error §§ 882-884; New Trial § 439.**

**What standard, regarding necessity for change of trial result, applies in granting new trial pursuant to Rule 33 of Federal Rules of Criminal Procedure for newly discovered evidence of false testimony by prosecution witness. 59 ALR Fed 657.**

APPEAL as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Currin, J.*, at the 16 April 1990 Criminal Session of Superior Court, ORANGE County, upon a verdict of guilty of first degree murder. Heard in the Supreme Court 11 February 1992.

Defendant was tried, non-capitally, on a true bill of indictment charging him with the first degree murder of his wife, Dawn Starnes Jolly. On 3 May 1990, the jury returned a verdict of guilty as charged. The court entered a sentence of life imprisonment. On appeal defendant brings forth numerous assignments of error. On 6 April 1992, defendant filed in this Court a motion for appropriate relief on the ground that perjured testimony was admitted during the course of defendant's trial. We conclude that defendant's trial

was free from prejudicial error, affirm his conviction, and deny his motion for appropriate relief.

The State's evidence in this case tended to show that defendant and the victim met in 1983. They began dating in 1984 and were married later that year. Defendant and the victim had a daughter, Brandi. Defendant had been married previously and had two sons from that marriage, Jason and Kendall. The Jollys experienced marital difficulties that related primarily to defendant's abuse of alcohol.

In June 1988 the victim began working at Apparel Directives. At about this same time, defendant's son Kendall developed an illness that eventually caused his death in February 1989. Subsequent to Kendall's death defendant's drinking increased. As an apparent result of his increased drinking, the Jollys' marital difficulties escalated.

On 27 July 1989, the victim met two friends after work for dinner at a steakhouse. After having searched for his wife for two hours, defendant, accompanied by his son Jason, located her car at the restaurant. Defendant went inside and asked the victim for his paycheck. Defendant followed her outside the restaurant where she went to retrieve the check from her purse. Defendant, in a rage, snatched the purse away from her and began emptying its contents on the ground. He then got into his car and rammed it into his wife's car. After making threatening statements, defendant drove away. This incident was witnessed by several of the victim's friends.

On 31 July 1989, the damage caused to the victim's car during the 27 July incident was being repaired. Vickie Parker, the victim's friend and supervisor, lent her car to the victim so that she could pick up lunch for the staff of Apparel Directives. The victim and defendant encountered one another at an intersection. Defendant displayed a gun and threatened to kill her. Frightened, she fled in her car across some lawns towards a highway. Defendant followed her in his vehicle and chased her at speeds in excess of 100 miles per hour until she stopped at a Highway Patrol Station along the highway. Emotionally shaken, she reported the incident to an officer and stated that defendant had fired the gun at her during the chase. She also called Parker to report the reason for her delay in returning to work, and told her that defendant had shown her the gun and threatened to kill her.

As a result of the preceding incidents, on 1 August she employed the services of attorney Rebecca Mills. She informed Mills of the chase on the previous day and asked that she obtain a restraining order against defendant. After obtaining the restraining order, Mills drafted a consent agreement which was entered 10 August.

On 20 August defendant sought admission to University of North Carolina Hospitals for treatment of his alcohol abuse problem. During an admission interview defendant stated that he had purchased a .25 caliber semiautomatic handgun the week before, that he had had suicidal ideations the day before, and that once while drinking he had thought about harming his wife. The hospital employee who admitted defendant explained to him that in order to be admitted he would have to remain hospitalized for at least 72 hours after formally requesting discharge. Defendant agreed to this condition and was admitted. However, on 23 August defendant walked away from the hospital without proper authorization. Law enforcement authorities were informed of his disappearance but were unable to locate him.

On Saturday, 3 September, defendant went to Apparel Directives where he shot through the victim's office window and into her computer terminal. The business was unoccupied at that time. The following Monday, after returning from a weekend vacation, the victim discovered the damage that defendant had caused to her office.

The victim was to testify on 6 September at defendant's probable cause hearing on a charge of assault with a deadly weapon which stemmed from the 31 July highway chase. She was reluctant to appear in court after discovering the bullet that was fired into her office. Nevertheless, she did appear and testified that she did not hear any shots, see any smoke, nor discover any bullet holes in the car.

On 19 September, around 5:15 p.m., the victim drove a pickup truck, owned by her friend Jay Crawford, to Colonial Hills Day Care Center to pick up her daughter Brandi. Sarah Guill and teenagers Candace Sorrell and Suzanne Rhodes were attending to the youngsters at the center. Guill saw the victim drive into the parking lot. Defendant, following immediately behind her, parked his car so that her car was blocked at the rear. Guill was disturbed by their arrival because defendant and the victim never came to the center together. Guill had been instructed by the center's owner

that defendant could pick up or visit Brandi only on Wednesdays and only when he was accompanied by his parents.

Guill watched defendant exit his car and walk over to the driver's side of the victim's truck. Guill became alarmed by the victim's expression as defendant approached. She then called 911. After she had placed the call she heard one of the teenagers exclaim, "he's shooting her."

Sorrell heard the shots in quick succession. As the shots were fired the victim was leaning toward the passenger side of the truck, away from defendant, and defendant was leaning into the truck. Defendant then turned away, walked to his car and drove away. Dawn Jolly died upon arrival at the hospital.

When defendant was subsequently arrested, after having eluded police for several hours, the police searched defendant's person and found a .25 caliber semiautomatic pistol in defendant's back pants pocket. The weapon still had one bullet in the clip and one bullet in the chamber.

An autopsy revealed that the victim had suffered four gunshot wounds. Two of the wounds were not life threatening. One of the potentially fatal wounds was caused by a bullet that passed through her upper left arm, left breast, left lung, and the left lobe of her liver before lodging next to her spine. The other bullet entered through her right back and traveled through her rib, diaphragm and liver, grazing her heart.

*Lacy H. Thornburg, Attorney General, by James J. Coman, Senior Deputy Attorney General, and Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

[1] By his first assignment of error, defendant contends the trial court erred by allowing three witnesses to testify that the victim had told them that defendant shot at her during the 31 July highway chase. Defendant argues that because the victim testified at defendant's probable cause hearing arising from that incident that she had not actually seen or heard gunshots during the pursuit, the State should not have been allowed to contradict that sworn

testimony with the witnesses' hearsay testimony. Defendant contends that because the hearsay statements were contrary to the victim's prior testimony, the statements lost their presumptive reliability as excited utterances, and should have been subjected to the same close scrutiny as statements tendered under the residual hearsay exceptions. As such, the State would have been required to bear the burden of showing that the statements possessed "particularized guarantees of trustworthiness." *Idaho v. Wright*, --- U.S. ---, 111 L. Ed. 2d 638 (1990); *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). Defendant also says that admission of this testimony violated his right to confront adverse witnesses as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 23 of the North Carolina Constitution.

We first note that prior testimony is itself hearsay evidence, N.C. R. Evid. 801, which is excepted from the hearsay rule by N.C. R. Evid. 804(b)(1). Although such statements are given under oath, they are nonetheless hearsay and presumably no more reliable than hearsay admitted under any of the other enumerated exceptions. We agree with the State that where, as here, the hearsay statements of a declarant are conflicting, the conflict creates a question of credibility and not, as defendant contends, one of reliability. Questions of credibility are to be determined by the jury. N.C. R. Evid. 104(e). When a declarant's conflicting hearsay statements have been determined to be excepted from the general prohibition against hearsay, the trial court need not subject the statements to any additional test for reliability before admitting them into evidence. Therefore the trial court did not err by admitting conflicting hearsay statements and allowing the jury to determine which of them was the most convincing.

[2] With regard to a defendant's rights of confrontation, in *State v. Stager*, 329 N.C. 278, 317, 406 S.E.2d 876, 898-99 (1991), this Court stated:

> [S]tatements falling within an exception to the general prohibition against hearsay may be admitted into evidence without violating a defendant's right to confrontation, if the evidence is reliable. *E.g., Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L. Ed. 2d 597 (1980); *State v. Porter*, 303 N.C. 680, 281 S.E.2d 377 (1981). Further, "a sufficient inference of reliability can be made 'without more' from the showing that the chal-

lenged evidence falls within 'a firmly rooted hearsay exception.'" *Porter,* 303 N.C. at 697 n. 1, 281 S.E.2d at 388 n. 1 (quoting *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539, 65 L. Ed. 2d at 608)[.]

N.C. R. Evid. 803(2) reads as follows:

Excited Utterance.—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

In this case, the record reveals that two of the statements attributed to the victim were made by her immediately after the chase and while still emotionally upset by the occurrence. Officer Jimmy Earp testified that when he arrived to receive the victim's complaint "[s]he was crying quite a bit, very upset. Hysterical." She told him that "she was going down the roadway, Randy was holding a gun out the window, shooting the gun at her. [S]he was running in excess of a hundred miles an hour and pulled into the Highway Patrol station." Vickie Parker testified substantially the same. She stated that when the victim called her from the station she was crying hysterically and that she told Parker that defendant had displayed a gun to her and threatened to kill her before chasing her down the highway. Rebecca Mills testified that when she met the victim at Mills' office the following day, she related to Mills the same series of events.

The record therefore makes clear that the testimony of Earp and Parker fit squarely within the requirements of N.C. R. Evid. 803(2) that the statement of the declarant be made about the startling event while still under the emotional stress caused by the event. However, Mills' testimony failed to meet the requirement that the statement be made by the declarant while under the stress of the event. The statement to Mills was made the day following the event described, after the declarant had an opportunity to reflect on what had occurred and was therefore inadmissible. *State v. Maness,* 321 N.C. 454, 364 S.E.2d 349 (1988). Because Mills' testimony did not fit within the excited utterance exception, its reliability was not sufficiently established so as to avoid violation of defendant's constitutional rights of confrontation.

In considering whether a violation of a defendant's constitutional right constituted prejudicial error, this Court must determine

whether the error was harmless beyond a reasonable doubt. *State v. Rankin*, 312 N.C. 592, 324 S.E.2d 224 (1985).

In this case, the facts testified to by Mills tended to show that the murder was premeditated and deliberated. However, in the absence of Mills' testimony, the same facts would have been properly before the jury. Earp and Parker had already testified in detail that the defendant had shown the victim the gun, threatened to kill her, and then chased her down the highway firing his pistol at her. Additionally, the credible and convincing evidence outlined above, including eyewitness testimony, was virtually uncontradicted and tended to prove each of the elements of the crime charged. There was ample evidence before the jury from which it could find defendant guilty of first degree murder. There was uncontradicted evidence of defendant's prior assaults on the victim as well as defendant's admissions that he planned to kill his wife. Mills' testimony could not have changed the outcome of defendant's trial. Therefore we hold the denial of defendant's rights of confrontation was harmless beyond a reasonable doubt.

[3] By his next assignment of error, defendant contends that the trial court erred by allowing Dr. Hagerty, an attending physician in the Department of Psychiatry at the University Hospital in Chapel Hill, to testify as to the contents of notes taken by a nurse upon defendant's admission to the hospital. These notes indicated that defendant stated that he had recently purchased a gun and that he had had thoughts about killing himself and harming his wife.

On cross-examination by the State concerning these notes, defendant was asked:

Q: And do you recall at that time that you told her that you had bought a gun one day last week and had planned to kill himself and his wife? Do you recall having said that?

A: If it's in the book, I said it, yes, sir.

"Where evidence is admitted without objection, the benefit of a prior objection to the same or similar evidence is lost, and the defendant is deemed to have waived his right to assign as error the prior admission of the evidence." *State v. Wilson*, 313 N.C. 516, 532, 330 S.E.2d 450, 461 (1985); *State v. Corbett*, 307 N.C. 169, 297 S.E.2d 553 (1982). Here the defendant's answer on cross-examination that, "If it's in the book, I said it, yes, sir," was substantially the same as Dr. Hagerty's earlier testimony which defendant

now assigns as error. We overrule this assignment of error, the defendant being deemed to have waived his right to assign error to the admission of this testimony.

[4] Defendant next assigns as error the admission of various hearsay testimony from several witnesses. Defendant contends that the testimony was either irrelevant or inadmissible character evidence, and that to his prejudice he was denied his right to confront adverse witnesses. The State contends that the statements were evidence of the victim's state of mind, N.C. R. Evid. 803(3), and that they were offered to rebut the defendant's contention that he and the victim were trying to reconcile their differences and that they were planning a romantic interlude on the day she was murdered.

In *State v. Stager*, 329 N.C. 278, 406 S.E.2d 876, we held that, "[e]vidence tending to show the victim's state of mind is admissible so long as the victim's state of mind is relevant to the case at hand." *Id.* at 314, 406 S.E.2d at 897; *State v. Meekins*, 326 N.C. 689, 695, 392 S.E.2d 346, 349 (1990). In *State v. Faucette*, 326 N.C. 676, 392 S.E.2d 71 (1990), we held that evidence which tended to show the burglary victim's fear of the defendant was admissible because it was relevant to show that the victim would not have given the defendant consent to enter. In this case, evidence which would tend to show that the victim feared defendant and that she regarded their relationship as irreconcilable, would be relevant as it would tend to rebut the defendant's contention that the couple was trying to resolve their differences and was planning a romantic interlude on the day that the victim was killed.

We agree that certain portions of the following testimony were erroneously admitted. However, we do not agree that defendant was prejudiced thereby.

Rebecca Mills, Dawn's attorney, testified that Dawn said to her, "Randy . . . has no respect for the law. He's not scared of anybody. And none of this is going to help. It's not going to work. [N]obody can control him and he's scared of nothing." Mills further testified, "She said that he had two sons by a previous marriage, and he did not have regular visitation with these boys until she married him and at her assistance [sic], that more or less there was, he really gave the boys no time until she married him and pretty much encouraged that."

Mills' testimony regarding defendant's failure to spend time with his sons did not tend to show that the victim was afraid of defendant or that she had no intention of reconciling with him. Rather the evidence tended to show defendant's bad character and, as such, should not have been admitted. N.C. R. Evid. 404(a)(1). In light of all the evidence that was properly introduced, this tangential bit of evidence could not have affected the outcome of the trial. It was not prejudicial error. N.C.G.S. § 15A-1443(a) (1988). The remainder of the testimony did tend to show that the victim was afraid of defendant and was properly admitted.

Ted Moore, the victim's employer, testified that he had spoken to Dawn on the Friday following defendant's probable cause hearing and that, "[s]he said they don't care; and I said Dawn, who doesn't care. She said the authorities don't care." Moore further testified that during a later conversation, "[s]he said I thought about what I believe in. [S]he said I want to be remembered to my daughter that I was a good woman."

This testimony did not tend to show the victim's state of mind with regard to her relationship with defendant. Thus, the testimony was irrelevant and should not have been admitted. It hardly implicated the defendant, however, and we cannot hold that if it had not been introduced, there would have been a different result at the trial. It was not prejudicial error. *State v. Milby*, 302 N.C. 137, 273 S.E.2d 716 (1981).

Vickie Parker was asked whether the victim frequently talked to her about her marital situation. She responded,

> Yes. She, they were not getting along. They were arguing a lot. She was very concerned with his drinking habits. She was also very concerned about her daughter Brandi. Brandi had begun wetting the bed and having some problems that Dawn associated with her overhearing and witnessing the arguments that she and Randy had.

This testimony, while only slightly probative of the victim's relevant state of mind, could not have been prejudicial to defendant. The witness simply related facts that were not in dispute, to wit: that the couple was having marital problems and that the victim was very concerned about defendant's alcohol abuse. The remainder of the testimony was innocuous.

[5]   Janene Wadell was permitted to testify that, "she told me that he'd see her dead before he'd see her with anybody else." On cross-examination by defendant, Officer Jack Terry testified that, "she told me that there had indeed been threats and that she felt that they would be carried out."

The testimony of these two witnesses went directly to the victim's state of mind and tended to show that she was afraid of defendant, she believed his threats, and that she would not have intended to reconcile with him or to meet to engage in sexual activity. Thus, this testimony was relevant and properly admitted. This assignment of error is overruled.

[6]   Defendant next assigns as error the trial court's instructions on premeditation and deliberation. The instruction permitted the jury to infer premeditation and deliberation .from "the brutal or vicious circumstances of the killing." Defendant contends that this instruction allowed the jury to consider matters not supported by the evidence. We disagree.

Defendant relies on *State v. Buchanan*, 287 N.C. 408, 215 S.E.2d 80 (1975), for the proposition that this killing was not "brutal or vicious." In *Buchanan*, the State's evidence tended to show that the defendant was the caretaker of a neighbor's property. The defendant saw the deceased and two other men drive past the defendant's home towards his neighbor's property and suspected they were going to steal firewood. Defendant drove to where the men had parked their vehicle and found them loading wood onto their truck. He blocked their truck with his own and approached them with his shotgun, telling them to "throw the wood down," adding, "God damn you, I'll kill you all." *Buchanan*, 287 N.C. at 410, 215 S.E.2d at 81. Defendant then fired a single shot which hit the deceased. The other men then loaded the deceased onto the truck and the defendant moved his truck to allow them to leave.

The Court held that the facts of the case failed to disclose a "vicious and brutal" killing and because the record revealed that the issues of "premeditation and deliberation" were the primary focus of the jury's deliberations, the defendant was entitled to a new trial. *Id.* at 422, 215 S.E.2d at 88.

In the instant case, the evidence, taken in the light most favorable to the State, tended to show that, unlike the killing in *Buchanan*, the killing of Dawn Jolly was physically and

STATE v. JOLLY

[332 N.C. 351 (1992)]

psychologically "vicious and brutal." Defendant repeatedly exhibited violent behavior towards his wife. Witnesses testified that he once used a set of car keys to inflict a wound on her chest so severe as to scar the skin. He assailed her in the parking lot of a steakhouse, rammed his car into hers and said to her, "You're next. I'm going to get you and I'm going to get your car." He then left the scene warning her not to come home that night. On another occasion he displayed a gun to her, threatened to kill her, and then chased her down the highway at extremely high speeds, firing the gun at her as she fled. Faced with a charge of assault with a deadly weapon, defendant went to the victim's place of employment and shot through her office window just four days prior to her scheduled testimony at his probable cause hearing. She testified at the hearing that although he chased her, she never saw or heard him fire the gun at her, possibly because of this intimidation.

These encounters with defendant caused the victim to suffer severe emotional trauma. She was depressed and cried uncontrollably. She became despondent over the apparent hopelessness of her situation and her inability to free herself from defendant, who continuously threatened and tried to dominate her. She found it necessary to conceal her whereabouts from the defendant. She moved her residence to a secret location and, in order to avoid defendant, traveled circuitous routes to and from work and the day care center; the places that defendant was certain he could find her.

On 19 September defendant followed the victim to the day care center. He parked his car behind her truck so as to block it in from behind. He approached her car, carrying the gun which he admitted having purchased for the purpose of killing his wife. Aware of defendant's numerous prior threats, the trapped victim was horrified by his approach. As she crouched in the truck, attempting to get as far from him as she could, defendant leaned into the truck and shot his wife four separate times. He inflicted numerous wounds, two of which were capable of causing her death. The victim remained conscious for sometime after being shot and said to those who came to her aid, "please call somebody. I've been shot three times." After she struggled to sit up in the ambulance that carried her to the hospital, efforts at resuscitation failed and she was pronounced dead upon arrival at the hospital.

STATE v. JOLLY

[332 N.C. 351 (1992)]

In *State v. Vereen*, 312 N.C. 499, 515, 324 S.E.2d 250, 260, *cert. denied*, 471 U.S. 1094, 85 L. Ed. 2d 526 (1985), the Court held that where "the victim underwent extreme physical pain and unspeakable psychological anguish prior to her death[,]" the evidence of the viciousness and brutality of the defendant's attack on the victim was sufficient to support the theory that the murder was committed with premeditation and deliberation.

The State's evidence showed that defendant subjected the victim to constant psychological abuse prior to and including the day of her killing. When he finally cornered her at the day care center where she had gone to pick up their daughter, he shot her four times with his semiautomatic pistol and then calmly returned to his car and drove away. We hold that this evidence was sufficient to support the submission of an instruction allowing the jury to infer premeditation and deliberation from the vicious and brutal circumstances of the killing. This assignment of error is overruled.

[7] Defendant next assigns as error the admission of certain testimony of Jack Tapp of the Orange County Sheriff's Department. On cross-examination by defendant, Tapp, the chief investigator of the homicide, testified that to his knowledge no gunpowder residue tests (paraffin tests) had been performed on the hands of either the defendant or the deceased. On re-direct examination by the State, Tapp explained the reasons why he decided not to order the performance of a residue test on the victim's hands despite his authority to do so. He explained, "[a]t the time the lady was transported, she was alive; and also looking at the results of the medical exam and the locations of the wounds, it was no doubt in my mind at that time that she had not handled a gun."

The defendant contends the testimony on cross-examination by Mr. Tapp that "it was no doubt in my mind at that time that she had not handled a gun" was inadmissible and tantamount to an opinion that the defendant was guilty of murder. The defendant says that Mr. Tapp had not qualified as an expert and could not testify to this opinion.

This testimony by Mr. Tapp was elicited by the State on re-direct examination after the defendant had elicited testimony from Mr. Tapp on cross-examination that a paraffin test had not been performed on Dawn Jolly. The State could introduce this testimony to explain a matter about which the witness had testified on cross-examination. *State v. Williams*, 315 N.C. 310, 320, 338 S.E.2d 75,

STATE v. JOLLY

[332 N.C. 351 (1992)]

82 (1986). Mr. Tapp was a trained law enforcement officer and had been employed as a criminal investigator by the Sheriff's Department for approximately nine months at the time Mrs. Jolly was killed. This made him better qualified than the jury to form an opinion of the subject matter about which he testified. It was not error to admit this testimony. *State v. Wise*, 326 N.C. 421, 390 S.E.2d 142, *cert. denied*, --- U.S. ---, 112 L. Ed. 2d 113 (1990). This assignment of error is overruled.

[8] By his next assignments of error, defendant contends that his right to a fundamentally fair trial was denied by the State's cross-examination of defendant and its final argument to the jury. Defendant was cross-examined as follows:

Q. Well, so you wanted her to bring your 4 year old daughter?

A. Yes, sir.

Q. To the alcohol detox center to visit with you. Is that right?

A. I don't care where I would have been, I still like to see her.

Q. And that was without regard to what effect, if any, that might have on the child. Is that right?

MR. WINSTON: Object.

COURT: Over-ruled.

A. It won't an alcohol, it was a psychiatric ward.

Q. So it was the psychiatric ward. And you wanted that 4 year old child brought there to see you knowing that you could leave the next day?

A. I didn't know I could leave the next day, no, sir.

Defendant argues that this cross-examination was not intended to test defendant's credibility or to elicit relevant evidence, but only to put before the jury his alleged bad character. We disagree. Although the prosecutor's questions may have suggested to the jury that defendant should have had more concern about the effect that such a setting might have on his young child and, as such, may have suggested that defendant was not a good father, defendant was given the opportunity to explain his adamant desire to see his daughter. We cannot say, as defendant would have us to do, that the prosecutor's questions twisted his testimony "into *de facto* evidence of bad character." Nor can we say that the cross-

STATE v. JOLLY

[332 N.C. 351 (1992)]

examination here at issue was not intended to challenge the veracity of defendant's explanation for his unauthorized departure from the hospital. Defendant had testified earlier that the reason he left the hospital without permission was because his wife had not brought Brandi to visit him as she had said that she would. The State was entitled to challenge this explanation by suggesting that defendant's desire to have his daughter visit him at the hospital was unreasonable. This assignment of error is overruled.

[9] Defendant next contends that the following argument by the prosecutor was improper.

> First of all, Mr. Winston [defense counsel] suggested that when Jason Jolly took the stand and Mr. Coman [the prosecutor] cross examined him regarding some threats he made to one of our witnesses, Candice Sorrell, that Mr. Coman then failed to bring to you the witness who received those threats. . . . The rules of evidence would not permit us to bring you that witness because the rules of evidence do not allow us to challenge a witness on a collateral matter. And the witness's bias is a collateral matter in this case.

Defendant contends that this argument was improper because it asserted that the State's witness had in fact been threatened and it contained an incorrect statement of the law. At the outset we note that defendant failed to object to the foregoing argument. Defendant must therefore show that the argument was so grossly improper that the trial court abused its discretion in failing to intervene *ex mero motu* to correct the alleged error. *State v. Jones*, 317 N.C. 487, 346 S.E.2d 657 (1986); *State v. Oxendine*, 330 N.C. 419, 410 S.E.2d 884 (1991).

We agree with defendant's contention that there was no evidence before the jury that Jason Jolly had threatened the State's witness. We also agree that it was improper for the State to argue the previously denied allegation as a proven fact, *State v. Britt*, 288 N.C. 699, 220 S.E.2d 283 (1975), and that the argument contained an incorrect statement of the law, 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 48 (3d ed. 1988). However, we do not find that the argument was so prejudicial that the court should have intervened *ex mero motu*. The entire matter of whether Jason Jolly had threatened the witness and whether the rules of evidence would have allowed another witness to so testify is collateral to the issue of defendant's guilt. As defendant concedes,

Jason's testimony was neutral with regard to his father's guilt and we cannot say that the outcome of defendant's trial would have differed if this argument had not been made. The trial judge did not abuse his discretion in failing to intervene *ex mero motu.*

[10] Defendant next assigns as error the prosecutor's argument to the jury that defendant's prior convictions demonstrated a "contemptuousness for the law." Defendant contends, and we agree, that the evidence of defendant's prior convictions was admissible only to impeach defendant's credibility and was not admissible as substantive evidence of guilt of the crime charged and should not have been argued as such. *State v. Tucker,* 317 N.C. 532, 346 S.E.2d 417 (1986). Nevertheless, defendant failed to object to this argument at trial. Furthermore, "the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson,* 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979). Here, immediately prior to arguing that the prior convictions demonstrated a contemptuousness for the law, the prosecutor argued that "[the convictions] don't make him guilty of first degree murder; and I think it would offend the 14 of you if I stood there and told you that." This statement served to lessen the impropriety of her subsequent argument. This argument was not so grossly improper that the court should have intervened *ex mero motu.*

[11] Defendant next contends that the trial court erred by overruling his objection to the prosecutor's argument that the prosecutor knew of no problem between the defendant and the State's witness Jay Crawford. After an objection by defense counsel and a subsequent bench conference, the prosecutor modified his argument to the effect that the evidence did not show that there was any problem between defendant and Crawford as of 19 September, the date of the murder. Defendant says that the argument was erroneous because it was an assertion of the prosecutor's personal knowledge and was contrary to the evidence. Defendant contends that the evidence showed that Crawford had threatened defendant prior to 19 September and that this evidence explained why defendant approached Crawford's truck (being driven by the victim) carrying a gun.

After thoroughly reviewing the transcript of defendant's trial, specifically those portions referenced by defendant in his brief, we are unable to find any evidence in the record that Crawford had previously threatened defendant. Defendant testified as to the content of a telephone conversation that he had with the victim's friend, Kim Gunter. Defendant told Gunter that he had just followed her to Durham, North Carolina, and that he knew Dawn was there. Gunter denied that Dawn was there. Defendant testified that, "she made the statement I won't repeat in court what Mr. Jay was going to do to me for following her to Durham." At most, this testimony revealed only that Gunter *believed* that Crawford would do *something* to defendant when he learned that defendant had followed Gunter to Durham. This testimony simply does not amount to evidence that Crawford had threatened defendant.

It is well settled a prosecutor may not place before the jury incompetent or prejudicial matters by injecting his own knowledge, beliefs and personal opinions not supported by the evidence. *State v. Boyd*, 311 N.C. 408, 319 S.E.2d 189 (1984), *cert. denied*, 471 U.S. 1030, 85 L. Ed. 2d 324 (1985); *State v. Britt*, 288 N.C. 699, 220 S.E.2d 283. In this case the prosecutor's argument, although phrased initially in terms of what he knew, did not place before the jury any prejudicial matter that was unsupported by the evidence. As stated above there was no evidence that Crawford had threatened defendant and even though defendant's objection was overruled, the prosecutor modified his argument and omitted any reference to his personal knowledge. The modified version of his argument was a fair characterization of the shortcomings of defendant's evidence. This assignment of error is overruled.

[12] After we heard oral arguments in this case, the defendant filed with this Court a motion for appropriate relief. We have determined that we may decide this motion on the basis of the materials before us. N.C.G.S. § 15A-1418(b) (1988).

The motion for appropriate relief shows that at trial, Lee Shoemate testified for the State. Shoemate testified that he was employed by the University of North Carolina Hospital, that he was a graduate of Harvard Medical School, and that he was a licensed physician in North Carolina. Shoemate further testified that it was he who admitted defendant to the hospital for alcohol detoxification and who conducted an admission interview. Shoemate testified that during this interview defendant stated that he had

purchased a .25 caliber handgun and had had thoughts about killing himself and harming his wife.

Subsequent to defendant's trial, hospital officials learned that Shoemate was not a graduate of an accredited medical school and that he may have obtained his medical license by the use of forged documents. Until this time, counsel for the State was unaware of Shoemate's perjury. Counsel for the State promptly notified defendant's appellate counsel of this information.

In his motion, defendant contends that Shoemate's perjured testimony as to his credentials added great credibility to his testimony concerning the inculpatory statements that defendant made to him. Defendant also contends that Shoemate's testimony was material, as that term was defined in *United States v. Agurs*, 427 U.S. 97, 49 L. Ed. 2d 342 (1976), because his testimony was "the only testimony by a witness as to the alleged statement by defendant going to show premeditation and deliberation[.]"

We disagree with defendant's contentions. As discussed above, when defendant was cross-examined as to whether he had made the inculpatory statements that were attributed to him by Shoemate, defendant admitted having done so. Any question as to the credibility of Shoemate's testimony is rendered moot by defendant's having corroborated Shoemate's testimony that defendant made the statements. Defendant's admission also belies his present contention that Shoemate was the only witness who testified that defendant made the inculpatory statements.

Nor do we agree that Shoemate's perjury was material. Shoemate was not tendered as an expert, nor did he render any medical opinions based upon his observations of defendant. Shoemate merely testified, as any lay witness could have, to the admissions made by defendant upon his admittance to the hospital. N.C. R. Evid. 801(d). Furthermore, where a particular element of a crime is supported by an abundance of evidence, the materiality of any individual item of evidence that tends to prove that element of the crime is decreased. *Agurs*, 427 U.S. at 112-113, 49 L. Ed. 2d at 354-355.

In this case, there was substantial evidence, in addition to defendant's statements to Shoemate, which tended to show that defendant acted with premeditation and deliberation. As discussed above, the killing was vicious and brutal. Without provocation,

defendant inflicted four gunshot wounds on the victim. *State v. Corn*, 303 N.C. 293, 278 S.E.2d 221 (1981). There was evidence that defendant had previously threatened to kill the victim and that on at least one prior occasion he had attempted to do so. *State v. Sanders*, 295 N.C. 361, 245 S.E.2d 674 (1978). There was also evidence that the victim believed that the defendant would kill her if she were ever involved in an intimate relationship with someone else. *State v. Norman*, 331 N.C. 738, 417 S.E.2d 233 (1992). Thus, we conclude that Shoemate's perjured testimony was not "material" within the meaning of *Agurs* and that defendant's motion should therefore be denied.

For the foregoing reasons, we conclude that defendant's trial was free from prejudicial error and that a new trial is not warranted.

No error.