STATE v. BELFIELD

[144 N.C. App. 320 (2001)]

━━━━━━━━

STATE OF NORTH CAROLINA v. DARRICK BELFIELD

No. COA00-595

(Filed 19 June 2001)

## 1. Evidence— witness testimony—defendant smoked crack cocaine in front of children—opened the door to testimony

The trial court did not err in an aiding and abetting case involving robbery and murder by allowing defendant's girlfriend to testify that defendant smoked crack cocaine in front of the parties' two children, because defendant opened the door to questions regarding whether and why the girlfriend did not leave her children at home with defendant when she went out.

## 2. Constitutional Law— right to remain silent—incriminating information elicited from another

Even though defendant invoked his Fifth Amendment privilege to remain silent, the trial court did not commit plain error in an aiding and abetting case involving robbery and murder by allowing defendant's girlfriend to testify that defendant never sought medical assistance or help for the victim and refused to allow his girlfriend to do so, because: (1) the Fifth Amendment

**STATE v. BELFIELD**

[144 N.C. App. 320 (2001)]

privilege is a personal privilege adhering to the person and not to the information that may incriminate him; and (2) defendant's invocation of his Fifth Amendment privilege is irrelevant when the evidence sought to incriminate defendant came from his girl-friend, who did not invoke her Fifth Amendment privilege.

**3. Evidence— card written by girlfriend to defendant—probative value outweighed by prejudicial effect**

The trial court did not abuse its discretion in an aiding and abetting case involving robbery and murder by denying defendant's motion to introduce into evidence a card written to him by his girlfriend while the two were in jail awaiting trial in an effort to attack the girlfriend's statement that she was afraid of defendant, because: (1) the trial court gave both sides ample opportunity to argue their positions on the admissibility of the card and concluded under N.C.G.S. § 8C-1, Rule 403 that the evidence's probative value was outweighed by the prejudicial effect; (2) the trial court stated it would allow defendant to explore his relationship with his girlfriend; and (3) the trial court allowed defense counsel to inquire of his girlfriend the nature of the writings and the content, and in fact allowed all of the writings except the particular card at issue which contained lipstick marks and vulgar sexual language.

**4. Criminal Law— aiding and abetting—advising jury of maximum sentence**

Although the trial court erred in an aiding and abetting case involving robbery and murder by disallowing defense counsel to advise the jury of the maximum sentence defendant could receive if found guilty, there was no prejudicial error because the evidence of defendant's guilt was overwhelming and this error was insignificant by comparison.

Appeal by defendant from judgments entered 9 June 1999 by Judge James E. Ragan, III in Northampton County Superior Court. Heard in the Court of Appeals 18 April 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Leonard G. Green, for the State.*

*Charles A. Moore for defendant-appellant.*

STATE v. BELFIELD

[144 N.C. App. 320 (2001)]

HUNTER, Judge.

Darrick Belfield ("defendant") appeals the jury verdicts finding him guilty of aiding and abetting his girlfriend, Betty L. Williams ("Ms. Williams"), in the armed robbery and murder of Jerry A. Belfield ("the victim"). We find no error.

The bulk of the State's evidence came from Ms. Williams, the principal defendant in the charges at issue. Defendant and Ms. Williams lived together just across a field from the victim. The State's evidence revealed that the two often "borrowed" money from the victim to buy crack cocaine which they both smoked. Ms. Williams was afraid of defendant "because he had physically assaulted her on several occasions when they argued . . . ." At trial, Ms. Williams testified that on 15 May 1998, she went over to the victim's house and exchanged sexual favors to borrow money from him, as she had done many times before. She further testified that later that same day, defendant threatened her with bodily harm if she did not go back to the victim's house and borrow more money from him. Then, after arguing with her, defendant got a bat from his kitchen and followed Ms. Williams to the victim's house—threatening her all the way. When the two arrived outside the victim's home, defendant instructed Ms. Williams to hit the victim with the bat and get some money from him. When she stood there hesitating, defendant handed Ms. Williams the bat and pushed her towards the victim's back door.

When she arrived at the victim's door, Ms. Williams knocked and the victim let her in. Upon stepping inside, she asked the victim if she could have a cigarette, to which he said "yes" and proceeded to go to his bedroom to get one. Ms. Williams then followed the victim to his bedroom and while his back was turned toward her, she hit him in the back of the head once with the bat. The victim dropped to the floor. Ms. Williams then took $150.00 out of his wallet, exited using the back door of the trailer through which she entered and gave the money to defendant who had been waiting outside the trailer for her the entire time. Neither defendant nor Ms. Williams called 9-1-1 to gain assistance for the victim—who subsequently died from the blow to the head. At the conclusion of his trial, the jury found defendant guilty on both counts of aiding and abetting, and the trial court sentenced defendant to 90 to 117 months imprisonment for the aiding and abetting robbery with a dangerous weapon conviction, and 210 to 261 months imprisonment for the aiding and abetting second degree murder conviction.

STATE v. BELFIELD

[144 N.C. App. 320 (2001)]

**[1]** In the record, defendant preserved eighteen assignments of error. However, he brings forward only four arguments before this Court. Therefore, any assignment not argued is deemed abandoned. N.C.R. App. P. 28(b)(5). Defendant first alleges the trial court committed error by allowing Ms. Williams to testify that defendant smoked crack cocaine in front of the parties' two children. It is defendant's contention that this testimony tends to prove defendant is of bad character and therefore, is inadmissible being both irrelevant and highly prejudicial. We are unconvinced.

Defendant is correct that, pursuant to N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999):

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. . . .*

*Id.* However, we need not reach defendant's argument that the testimony was inadmissible pursuant to this statute. Instead, we find the testimony was admissible because defendant "opened the door" to the testimony. The record reveals that in an effort to show that Ms. Williams trusted defendant, on cross-examination defense counsel inquired of Ms. Williams:

Q. How many children do you and [defendant] have?

A. 2.

Q. How old are they?

A. 5 and 6.

. . .

Q. And those times you would be [away from home] on some of those occasions, those children would be home with [defendant] would they not?

A. No.

Q. You wouldn't leave those children home with him when you'd go out there and stay all night and he would come looking for you?

A. No.

. . .

A. I would leave them at my Mom's house. He would go over there and get them from there. He would go get the boys where I leave [sic] them at Mom's house and he would go over there and get the boys hisself [sic] and take them back with him, but I don't leave them there with him.

Then, on re-direct, the State inquired of Ms. Williams as to whether the reason she left her children with her mother was because defendant "smoked crack cocaine while the children were in the house[.]" Ms. Williams answered, "[y]es."

The law has long been that, even where

th[e] type of testimony is not allowed[,] . . . when a party first raises an issue, it opens the door to questions in response to that issue and cannot later object to testimony regarding the subject raised. *See State v. Norman*, 331 N.C. 738, 742, 417 S.E.2d 233, 235 (1992).

*Middleton v. Russell Group, Ltd.*, 126 N.C. App. 1, 23-24, 483 S.E.2d 727, 740, *disc. review denied*, 346 N.C. 548, 488 S.E.2d 805 (1997). Therefore, because defense counsel opened the door to questions regarding whether and why Ms. Williams did not leave her children at home with defendant when she went out, we hold that defendant cannot now argue that the trial court's allowance for response to such questions was error. Defendant's assignment is overruled.

[2] Defendant's second assignment of error is that the trial court committed plain error by allowing Ms. Williams to testify that defendant never sought medical assistance or help for the victim and refused to allow her to do so. Defendant contends that because he invoked his Fifth Amendment privilege, this portion of Ms. Williams' testimony—elicited by the State to prove defendant acted with malice in helping Ms. Williams commit the crimes—violated his Constitutional right to remain silent. We disagree.

We note that all of the cases cited by defendant in his brief deal with this issue arising when a prosecutor attempts to *compel a defendant, who has invoked his privilege, to incriminate himself.* However, that is not the case *sub judice.* Our Supreme Court has long held

that *the Fifth Amendment privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him.* As Mr. Justice Holmes put it: "A party is privileged from producing the evidence but not from its production." *Johnson v. United States*, 228 U.S. 457, 458, 57 L. Ed. 919, . . . (1913). The Constitution explicitly prohibits compelling an accused to bear witness "against himself": it *necessarily does not proscribe incriminating statements elicited from another.* Compulsion upon the person asserting it is an important element of the privilege, and "prohibition of compelling a man . . . to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from *him*," *Holt v. United States*, 218 U.S. 245, 252-53, . . . 54 L. Ed. 1021 (1910) (emphasis added). It is extortion of information from the accused himself that offends our sense of justice.

\* \* \*

The divulgence of potentially incriminating evidence against [defendant] is naturally unwelcome. But . . . [t]he basis complaint of [defendant] stems from the fact of divulgence of the . . . incriminating information, not from the manner in which or the person from whom it was extracted. Yet such divulgence, where it did not coerce the accused h[im]self, is a necessary part of the process of law enforcement . . . .

*Lowder v. Mills, Inc.*, 301 N.C. 561, 585-86, 273 S.E.2d 247, 261 (1981) (emphasis added) (quoting *Couch v. United States*, 409 U.S. 322, 328-29, 34 L. Ed. 2d 548, 554-55 (1973)). Thus, because in the case *sub judice*, the evidence sought to incriminate defendant came from Ms. Williams—who did not invoke her Fifth Amendment privilege—and not from defendant, defendant's invocation of his own privilege is irrelevant, being personal to him and not reaching Ms. Williams. *Id.* Therefore, it was proper and necessary for the State to seek to gain the incriminating evidence against defendant from Ms. Williams.

**[3]** Defendant's third assignment of error is that the trial court erred by denying defendant's motion to introduce into evidence a card written to him by Ms. Williams while the two were in jail awaiting trial. It is defendant's contention that the card was relevant as to Ms. Williams' credibility, because although Ms. Williams testified she was afraid of defendant, the card she sent stated she would always be his friend and indicated she wanted to have sexual relations with him. We are unpersuaded by defendant's argument.

The record reflects that the trial court allowed defense counsel and the State to argue their positions on allowing or disallowing admission of the evidence. It was defendant's contention that because the card stated Ms. Williams still loved him, it then went to prove that she must have been lying and could not also be afraid of him. However, the trial court determined that the evidence was inadmissible, concluding that "any probative value this would have is clearly outweighed by the prejudicial, by the prejudicial effect, so I'm not going to allow it." The trial court did state that the defense would be allowed to explore defendant's relationship with Ms. Williams.

Under Rule 403 of the North Carolina Rules of Evidence:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C. Gen. Stat. § 8C-1, Rule 403 (1999). Further, the decision regarding "[w]hether or not to exclude evidence under Rule 403 is within the discretion of the trial court and will not be overturned absent an abuse of discretion." *State v. Underwood,* 134 N.C. App. 533, 538, 518 S.E.2d 231, 237 (1999), *writ improvidently allowed,* 352 N.C. 669, 535 S.E.2d 33 (2000).

In the case at bar, the record clearly reflects the trial court gave both the State and defense counsel ample opportunity to argue their positions on the admissibility of the card. Additionally, defense counsel argued to introduce the many other cards and letters written by Ms. Williams to defendant while the two were in jail. Consequently, the trial court allowed the defense to inquire of Ms. Williams the nature of the writings and the content, and in fact, the trial court allowed all of the writings to be admitted into evidence except for the particular card at issue, which contained lipstick marks and vulgar sexual language. From the record, we do not believe that excluding the one writing from Ms. Williams to defendant prejudiced the defendant's opportunity to prove or disprove that Ms. Williams was afraid of him. Instead, we agree with the State that the card's "probative value [wa]s lost in [its] lurid nature . . . ." Thus, we find no abuse of discretion in the trial court's refusal to admit the card into evidence.

STATE v. BELFIELD

[144 N.C. App. 320 (2001)]

**[4]** Defendant's final assignment of error is that the trial court erred in disallowing defense counsel to advise the jury of the maximum sentence defendant could receive if found guilty. In support of his argument, defendant cites *State v. Walters*, 294 N.C. 311, 240 S.E.2d 628 (1978), in which our Supreme Court held:

> G.S. 84-14 provides, in part: "In jury trials the whole case as well of law as of fact may be argued to the jury." *This statute secures to counsel the right to inform the jury of the punishment prescribed for the offense for which defendant is being tried. State v. McMorris*, 290 N.C. 286, 225 S.E.2d 553 (1976); *State v. Britt*, 285 N.C. 256, 204 S.E.2d 817 (1974). *Accord, State v. Irick*, 291 N.C. 480, 231 S.E.2d 833 (1977). Counsel may exercise this right by reading the punishment provisions of the statute to the jury, though he "may not argue the question of punishment in the sense of attacking the validity, constitutionality, or propriety of the [prescribed punishment]." *State v. Britt, supra*, [285 N.C.] at 273, 204 S.E.2d at 829. "Nor may counsel argue to the jury that the law ought to be otherwise, that the punishment provided thereby is too severe and, therefore, the jury should find the defendant not guilty of the offense charged but should find him guilty of a lesser offense or acquit him entirely." *Id.*

> Thus the trial court erred in denying defense counsel the right to inform the jury of the punishment prescribed by law for second degree murder, voluntary manslaughter and involuntary manslaughter. . . .

*Id.* at 313-14, 240 S.E.2d at 630 (emphasis added).

Contrarily, the State argues that *Walters, supra,* is distinguishable because in that case, "there was evidence to support a conviction for either second degree murder, voluntary or involuntary manslaughter." Thus, it is the State's contention that because the present defendant was charged with only two offenses, neither of which contain any lesser included offenses, defendant "was either guilty of aiding and abetting second degree murder, or no murder at all. Likewise, he was *either guilty of aiding and abetting robbery with a dangerous weapon, or no robbery at all.*"

In our view, it is clear that defendant had a statutory "right to *inform* the jury of the punishment prescribed for the offense for which defendant [wa]s being tried[,]" regardless of what the offenses were or how many of them there were. *Id.* at 313, 240 S.E.2d at 630

(emphasis in original). In this regard, we do not see the difference between *Walters* and the present case. Thus, we hold that the trial court erroneously denied defendant the right to read to the jury the punishment prescribed under the Structured Sentencing Act for the charged offenses. Nevertheless, we must now decide whether the error was prejudicial to defendant.

> Mere technical error does not entitle defendant to a new trial. *State v. Alexander*, 279 N.C. 527, 184 S.E.2d 274 (1971). The burden is on the appellant to show prejudicial error amounting to the denial of some *substantial* right. *Kennedy v. James*, 252 N.C. 434, 113 S.E.2d 889 (1960). . . .

*Id.* at 314, 240 S.E.2d at 630 (emphasis added).

> In cases where evidence of a defendant's guilt is overwhelming and the error complained of is insignificant by comparison, we have held, and rightly so, that such insignificant error could not have contributed to the conviction and was therefore harmless. . . .

*Id.* at 315, 240 S.E.2d at 631.

In the case at bar, the transcript of counsels' arguments to the jury (and any objections attached thereto) is not included in the record before this Court. However, the record does reflect Ms. Williams' testimony in which she plainly asserted that defendant had instructed and encouraged her to hit the victim over the head and take his money—for the purpose of being able to purchase more crack cocaine. Ms. Williams' testimony further reflected that defendant threatened her with bodily harm if she failed to do as she was told. Months later, when defendant was arrested on a completely unrelated charge, defendant told Deputy Sheriff Griffin that he went to the victim's house with Ms. Williams and that after she went inside "he heard a loud thumping noise, accompanied by a sound like someone moaning." This evidence was substantial in not only placing defendant at the scene of the crime, but also in corroborating Ms. Williams' testimony that defendant was aware of and involved in the crime. We, therefore, hold that this "evidence of [] defendant's guilt [wa]s overwhelming and the error complained of is insignificant by comparison . . . ." *Id.* Thus, the insignificant error, being harmless, could not have contributed to defendant's conviction. *Id.* Quoting our United States Supreme Court, our North Carolina Supreme Court said it best, "Defendant[] cannot expect the impossible—a perfect trial.

*Lutwak v. United States,* 344 U.S. 604, 97 L. Ed. 593, . . . [(1953)]. What [he is] entitled to expect is a trial that is fair and free from prejudicial error. This [he] received . . . ." *State v. Grant,* 19 N.C. App. 401, 414, 199 S.E.2d 14, 23 (1973).

No error.

Judges WALKER and TYSON concur.