STATE OF NORTH CAROLINA v. CORNELL GLENDELL WILSON

No. COA01-396

(Filed 2 July 2002)

## 1. Appeal and Error; Juveniles— transfer hearing—failure to preserve right to appeal transfer order

Although defendant juvenile appeals from the validity of evidence received at a transfer hearing and the ensuing transfer order to superior court in an assault with a deadly weapon with intent to kill inflicting serious injury case, defendant failed to preserve the right to appeal the transfer order, because: (1) in order to properly preserve the issue of transfer for review by the Court of Appeals, defendant was required under N.C.G.S. § 7B-2603 to appeal the transfer order and issues arising from it to the superior court, which he failed to do; (2) suspension of the appellate rules under N.C. R. App. P. 2 is not permitted for jurisdictional concerns; and (3) appropriate circumstances are not present in this case to permit the Court of Appeals to issue a writ of certiorari under N.C. R. App. P. 21.

## 2. Evidence— victim's statement—previous shooting—opening the door to testimony

The trial court did not err in an assault with a deadly weapon with intent to kill inflicting serious injury case by admitting into evidence a statement by the victim regarding a previous shooting of the victim by defendant's brother, because: (1) defendant opened the door to the testimony at issue by asking the victim an open-ended question about the length of the victim's high school education, and the victim responded that he stopped in tenth grade since he was shot by defendant's brother; and (2) defendant has failed to show that even if admission of the victim's testimony was error, defendant was prejudiced by its admission.

## 3. Evidence— hearsay—out-of-court statement—failure to object

The trial court did not err in an assault with a deadly weapon with intent to kill inflicting serious injury case by admitting into evidence an out-of-court statement by defendant's brother telling bystanders that they might want to leave the park since he was about to "light the place up," because: (1) defense counsel waived the right to assign error to admission of this testimony since defense counsel failed to object to prior testimony that was vir-

tually identical to this testimony; and (2) even if this testimony would have been excluded, the same facts were testified to by another witness and would have still been before the jury.

Appeal by defendant from judgment dated 5 October 2000 by Judge William C. Gore, Jr. in Superior Court, Brunswick County. Heard in the Court of Appeals 30 January 2002.

*Attorney General Roy Cooper, by David N. Kirkman, Assistant Attorney General, for the State.*

*Nicole M. Molin and Bruce A. Mason for defendant-appellant.*

McGEE, Judge.

Two juvenile petitions were filed in District Court, Brunswick County on 22 November 1999 alleging that Cornell Glendell Wilson (defendant) was a delinquent juvenile as defined by N.C. Gen. Stat. § 7A-517(12) (now N.C. Gen. Stat. § 7B-1501(7)). The petitions charged defendant with conspiracy to commit murder and assault with a deadly weapon with intent to kill inflicting serious injury. Following a probable cause hearing, the court found probable cause for the charge of assault with a deadly weapon with intent to kill inflicting serious injury in an order dated 26 January 2000. The court did not find probable cause for the charge of conspiracy to commit murder. The court transferred defendant's case to superior court in an order dated 26 January 2000. Defendant was indicted in a true bill on 14 February 2000 for assault with a deadly weapon with intent to kill inflicting serious injury.

The State's evidence at trial tended to show that Calvin Mosley (Mosley) and a group of friends went to a park in Supply, North Carolina the afternoon of 21 November 1999 to play basketball. When they arrived, defendant and several other people were already at the park. Mosley and his friends played basketball with defendant and the others.

After the game, defendant's brother, Winston Stothart (Winston), walked to the basketball court with a "little machete" in his hand. Two years earlier, Winston and Mosley had a disagreement and Winston shot Mosley. Mosley testified that on 21 November 1999, as he was sitting down, Winston walked towards him shouting, "Where is he? Where is he? . . . I'm going to kill you, m.f." Mosley said he stood up with a towel in his hand. Winston told Gary Fullwood (Fullwood)

and Gregory Gilbert (Gilbert), who were near the basketball court, that they might want to leave because he was going to "light this place up." Winston then got into his car and left. Defendant also left in his truck. On his way out of the park, defendant hit a tree and several people on the basketball court laughed.

Defendant and his brother Shawn Stothart (Shawn) returned in defendant's truck about five minutes later. Defendant climbed out of the back of the truck and cocked the .12 gauge shotgun he was carrying. A shell ejected and defendant reloaded it into the shotgun. Shawn asked who ran his brother off the road. Witnesses for the State testified that Shawn said "shoot him" or "somebody need[s] to shoot him." Witnesses testified Shawn pulled out a handgun and Mosley began to run. They testified defendant and his brother fired at Mosley as he ran away. Defendant fired three to five shotgun blasts and Shawn used up all his ammunition firing at Mosley.

Mosley testified he did not own a gun and did not have one with him at the park. Witnesses for the State testified they never saw Mosely with a firearm the day of the shooting. Mosley was struck with shotgun pellets in his back, shoulder, ear, stomach, hands and head. He was taken to the hospital where he stayed for a week. Mosley testified he still had 157 pellets in his body at the time of trial.

Defendant and three defense witnesses testified that at the park Mosley pulled a gun from under his towel while defendant and Mosley were talking. Defendant also said Mosley jumped up from behind a light pole and pointed a gun at Shawn and defendant. Defendant testified he went into shock from seeing Mosley's gun and fired his shotgun at Mosley. Defendant testified he only shot in the direction of Mosley because Mosley pulled a gun on him. He said he fired after Shawn shot his pistol and he only fired to give himself enough time to run to save his life.

Two defense witnesses testified that Mosley pulled a gun from his towel, shoved it in Shawn's face, and pulled the trigger twice but the gun just clicked. Shawn then pulled out his gun and began firing at Mosley.

The jury found defendant guilty of felonious assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was sentenced to seventy-three to ninety-seven months imprisonment in a facility suitable for his age. From this judgment, defendant appeals.

## I.

**[1]** Defendant's first three assignments of error contest the validity of evidence received at the transfer hearing and the ensuing transfer order to superior court. Before reaching the merits of defendant's assignments of error, however, we must first determine if these issues are properly before our Court. The State contends that "defendant failed to preserve the right to appeal the transfer order by failing to appeal the District Court's order to the Superior Court." We agree.

N.C. Gen. Stat. § 7B-2603 (1999), entitled "Right to appeal transfer decision," states in part that

(a) [A]ny order transferring jurisdiction of the district court in a juvenile matter to the superior court may be appealed to the superior court for a hearing on the record. Notice of the appeal must be given in open court or in writing within 10 days after entry of the order of transfer in district court. . . .

. . .

(c) If an appeal of the transfer order is taken, the superior court shall enter an order either (i) remanding the case to the juvenile court for adjudication or (ii) upholding the transfer order. . . .

(d) The superior court order shall be an interlocutory order, and the issue of transfer may be appealed to the Court of Appeals only after the juvenile has been convicted in superior court.

Pursuant to this statute, issues arising from a transfer order from the juvenile court to the superior court must be appealed to the superior court. The statute does not provide a procedure for appeal directly to our Court. Following appeal of the transfer order to superior court, if the transfer order is upheld by the superior court and the juvenile is thereafter convicted in superior court, then an appeal of the transfer order is to our Court.

This current version of N.C. Gen. Stat. § 7B-2603 differs significantly from earlier versions of the statute. Prior to the 1998 recodification of the juvenile code in Chapter 7B of our General Statutes, an order transferring a juvenile case to superior court was a final order and immediately appealable directly to our Court. *State v. T.D.R.*, 347 N.C. 489, 495-96, 495 S.E.2d 700, 703 (1998) (discussing N.C. Gen. Stat. § 7A-666 (1995) which was repealed by Session Laws 1998-202, s. 5, effective July 1, 1999, and replaced by N.C. Gen. Stat. § 7B-2603).

Upon recodification in 1998, N.C. Gen. Stat. § 7B-2603(a) provided that appeal of a transfer order was to the superior court, but included the language that "a juvenile who fails to appeal the transfer order to the superior court waives the right to raise the issue of transfer before the Court of Appeals until final disposition of the matter in superior court." N.C. Gen. Stat. § 7B-2603(a) (1998). The language of the 1998 version of N.C. Gen. Stat. § 7B-2603 also tended to indicate that the issue of transfer could be raised for the first time on appeal to this Court following final disposition in superior court.

The General Assembly deleted the above-quoted sentence from the current version of N.C. Gen. Stat. § 7B-2603, which became effective on 1 July 1999 (Session Laws 1999-423, s. 2 effective July 1, 1999). As the State correctly contends in its brief to this Court, by removing this sentence, the General Assembly "removed from the statute any indication that a juvenile could simply skip an appeal in superior court, but still challenge the transfer order after losing a trial in superior court." *See also In re J.L.W.*, 136 N.C. App. 596, 599, n.2, 525 S.E.2d 500, 502, n.2 (2000) ("Effective 1 July 1999, transfer orders are not appealable to the Court of Appeals and may be appealed to the Superior Court."). In order to properly preserve the issue of transfer for review by our Court, defendant was required to appeal the transfer order and issues arising from it, to superior court, which he failed to do. This is in accord with N.C. Gen. Stat. § 7B-2603 (1999) and the general principle of appellate review that appeals in criminal matters lie from the district court to the superior court and not directly to the Court of Appeals. N.C. Gen. Stat. § 7A-271(b) (1999). Therefore, defendant's first three assignments of error are not properly before this Court.

Nevertheless, defendant seeks review of the juvenile court transfer order by requesting that this court exercise its discretion pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure to hear defendant's appeal on these issues. Alternatively, defendant requests this Court grant a writ of certiorari pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure to review the transfer order. However, by either avenue, we are unable to address the issues arising out of defendant's appeal of the transfer order.

Rule 2 of our Appellate Rules states that

[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, sus-

pend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C.R. App. P. 2. "[S]uspension of the appellate rules under Rule 2 is not permitted for jurisdictional concerns." *Bailey v. State*, 353 N.C. 142, 157, 540 S.E.2d 313, 323 (2000) (citations omitted). *See also* N.C.R. App. 1(b) (stating that the Appellate Rules "shall not be construed to extend or limit the jurisdiction of the courts of the appellate division as that is established by law"); *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156, 392 S.E.2d 422, 424 (1990) (adopting the United States Supreme Court's holding that appellate courts " 'may not waive the jurisdictional requirements . . . , even for "good cause shown" under Rule 2' ") (quoting *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317, 101 L. Ed. 2d 285, 291 (1988))). We are therefore without authority to suspend our Appellate Rules pursuant to Rule 2 in order to entertain defendant's appeal that is not properly before this Court.

Although defendant did not file a petition for writ of certiorari, we elect to treat defendant's argument on this issue which was propounded at oral argument, as a petition for a writ of certiorari. *State v. Jarman*, 140 N.C. App. 198, 201, 535 S.E.2d 875, 878 (2000).

Our General Statutes provide that

(c) The Court of Appeals has jurisdiction, exercisable by one judge or by such number of judges as the Supreme Court may by rule provide, to issue the prerogative writs, including . . . certiorari, . . . in aid of its own jurisdiction, or to supervise and control the proceedings of any of the trial courts of the General Court of Justice . . . . The practice and procedure shall be as provided by statute or rule of the Supreme Court, or, in the absence of statute or rule, according to the practice and procedure of the common law.

N.C. Gen. Stat. § 7A-32(c) (1999).

Our Supreme Court has set forth the "practice and procedure" for the issuance of a writ of certiorari in Rule 21 of the N.C. Rules of Appellate Procedure, which states that

[t]he writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judg-

ments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to G.S. 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief.

N.C.R. App. P. 21.

Such appropriate circumstances are not present in this case that would permit the Court to issue a writ of certiorari pursuant to Rule 21; therefore, we dismiss defendant's first three assignments of error.

## II.

**[2]** By his fourth assignment of error, defendant argues the trial court erred in admitting into evidence a statement by the victim, Mosley, regarding a previous shooting.

On direct examination, the State asked Mosley if he knew defendant's brother, Winston. Mosley replied, "Yes, ma'am. We was—well, we was friends at one time until he shot—[.]" At this point, defense counsel objected to Mosley's statement and the trial court sustained the objection. Mosley then continued by saying, "Until he shot me—[,]" to which defense counsel again objected. The trial court instructed Mosley, "No, don't say that" and instructed the jury to "strike the witness' last utterance; do not consider it."

On cross-examination, defense counsel asked Mosley what grade he completed in high school, to which Mosley answered, "Well, it was about tenth grade and that was when the incident—when I got shot the first time." Defense counsel objected to this statement and the trial court overruled his objection.

On redirect examination, the State asked Mosley why he did not finish the tenth grade. Mosley responded that it was "[b]ecause [I got] shot back in '98." The State asked Mosley who shot him in 1998 and defense counsel objected. The trial court overruled the objection and Mosley answered that he was shot by defendant's brother, Winston, and that this shooting halted his education.

Defendant argues that Mosley's testimony was irrelevant and should have been excluded pursuant to N.C. Gen. Stat. § 8C-1, Rules 401 and 402. Further, defendant argues that the probative value of the evidence is substantially outweighed by its unfair prejudice to defendant and it should have been excluded under N.C. Gen.

Stat. § 8C-1, Rule 403. Defendant also argues that he did not open the door to this line of questioning because questioning Mosley about how far he went in school "was simply an information gathering question."

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (1999). Relevant evidence is generally admissible. N.C. Gen. Stat. § 8C-1, Rule 402 (1999). However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" N.C. Gen. Stat. § 8C-1, Rule 403 (1999).

"The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission." *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (citing *State v. Agnew*, 294 N.C. 382, 241 S.E.2d 684, *cert. denied*, 439 U.S. 830, 58 L. Ed.2d 124 (1978)). Defendant must therefore show that admission of Mosley's statement regarding the prior shooting was error and that defendant was prejudiced by the statement.

Because defendant opened the door to the testimony at issue, we need not address defendant's argument that the testimony was inadmissible because it was irrelevant or overly prejudicial. "The law has long been that, even where 'th[e] type of testimony is not allowed[,] . . . when a party first raises an issue, it opens the door to questions in response to that issue and cannot later object to testimony regarding the subject raised.' " *State v. Belfield*, 144 N.C. App. 320, 324, 548 S.E.2d 549, 551 (2001) (quoting *Middleton v. Russell Group, Ltd.*, 126 N.C. App. 1, 23-24, 483 S.E.2d 727, 740, *disc. review denied*, 346 N.C. 548, 488 S.E.2d 805 (1997) (internal citations omitted)). In this case, because defense counsel opened the door to questions regarding the earlier shooting of Mosley by asking Mosley an open-ended question about the length of his high school education, we hold that defendant cannot effectively argue that the trial court erred in allowing Mosley's response and explanation and the State's subsequent questions on redirect.

Further, "[t]he admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." *Gappins*, 320 N.C. at 68, 357 S.E.2d at 657 (citing *State v.*

*Billups*, 301 N.C. 607, 272 S.E.2d 842 (1981); *State v. Cross*, 293 N.C. 296, 302, 237 S.E.2d 734, 739 (1977); N.C.G.S. § 15A-1443(a) (1983)). Defendant has failed to show that even if admission of Mosley's testimony was in error, defendant was prejudiced by its admission. Overwhelming evidence was presented at trial from which a jury could find defendant guilty of assault with a deadly weapon with intent to kill inflicting serious bodily injury. At least seven witnesses testified that as Mosley ran away, defendant fired a shotgun at Mosley, striking him with shotgun pellets. Further, defendant admitted to firing two shotgun blasts at Mosley. Defendant's fourth assignment of error is overruled.

III.

[3] By his fifth assignment of error, defendant contends the trial court erred in admitting evidence of an out-of-court statement by Winston, that was offered for the truth of the matter asserted.

Fullwood, testifying for the State, was asked what happened when Winston arrived at the park on 21 November 1999. Fullwood answered, "Well, he came to the park—he came over there to where me and Greg was standing and he said, 'Y'all might want to leave because there might be some trouble and we're going [to] light the place up.' " Defense counsel objected to this statement and the trial court sustained the objection. The trial court instructed the jury that

> Mr. Fullwood is about to testify as to statements allegedly made to him by someone else. You may not consider—if you find that the statements were in fact made by this other person, you may not consider the statement for the truth of the matter asserted in the statement. You may, however, consider it to show why this person acted as he did, and for no other purpose.

The State then asked Fullwood what Winston said to him when he arrived at the park. Fullwood answered that Winston "said that y'all might want to leave because I'm about to light this place up."

Gilbert also testified for the State about what Winston told him when Winston arrived at the park on 21 November 1999. Gilbert stated that, "He told me if I—if I wanted to leave, I better go ahead and leave because he was about to light the m.f. up." Defendant did not object to this testimony.

Because defense counsel failed to object to Gilbert's testimony, which was virtually identical to Fullwood's testimony, defendant waived his right to assign as error the trial court's admission of Fullwood's testimony. " 'Where evidence is admitted without objection, the benefit of a prior objection to the same or similar evidence is lost, and the defendant is deemed to have waived his right to assign as error the prior admission of the evidence.' " *State v. Jolly*, 332 N.C. 351, 361, 420 S.E.2d 661, 667 (1992) (quoting *State v. Wilson*, 313 N.C. 516, 532, 330 S.E.2d 450, 461 (1985)). Even if Fullwood's testimony had been excluded, the same facts were testified to by Gilbert and would have still been before the jury. This assignment of error is overruled.

No error.

Judge WALKER concurs.

Judge BIGGS concurs in the result only.