NO. COA14-100

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

STATE OF NORTH CAROLINA

v.                              Mecklenburg County
                                No. 10 CRS 251563
ELLIS EUGENE ROYSTER


Appeal by defendant from judgment entered 29 May 2013 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 August 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Amar Majmundar, for the State.*

> *Law Office of Margaret C. Lumsden PLLC, by Margaret C. Lumsden, for defendant-appellant.*


McCULLOUGH, Judge.

Defendant Ellis Eugene Royster appeals from a judgment entered based upon his conviction for first degree murder. For the following reasons, we find no error in part and no prejudicial error in part.

## I.  Background

On 1 November 2010, a Mecklenburg County Grand Jury indicted defendant on a charge of murdering Amias Bernard Robinson on 12 August 2010.

Defendant's case came on for trial during the 20 May 2013 Criminal Session of Mecklenburg County Superior Court, the Honorable W. Robert Bell, Judge presiding.

The State's evidence at trial tended to show the following: Alvin Alexander testified that at 4:00 p.m. on 12 August 2010, he met his friend Randall Henry (otherwise known as "Randy") at defendant's residence on Eastbrook Road in Charlotte, North Carolina. Defendant lived with his grandmother "Miss D" and grandfather "Mr. D." "Miss D" was known in the neighborhood as the "Candy Lady." Alvin went into defendant's bedroom where defendant and Randy played a video game while Alvin smoked marijuana. Sometime thereafter, Alvin, Randy, and defendant went outside to the end of defendant's driveway to smoke cigarettes. Shariff Baker, a resident of defendant's neighborhood, approached Alvin, Randy, and defendant and told them that "a couple guys took his money from him." Alvin testified that Shariff had stated that "[h]e was going to buy some weed from them, and they just pulled off with his money."

Shariff testified that on 12 August 2010, he tried to buy $10.00 worth of marijuana from Jadarius McCall, otherwise known as "J.D." Shariff was standing in front of a house on Eastbrook Road when J.D. drove by in a blue car. Three other people were

in the car with him – a man by the name of Delehay, Tim, and an unidentified male. Shariff gave $10.00 to Delehay, the group told Shariff to get out of their way, and J.D. drove off without giving Shariff marijuana or returning his money. Shariff was upset and began walking towards defendant's residence. Once Shariff saw defendant, he told defendant that J.D., Delehay, and Tim had taken his money. Defendant told Shariff that he "would get it back for me."

Alvin testified that he knew Tim's stepfather, Chris, and that he told Shariff that he would talk with Chris. Alvin drove to Chris' house, "told Chris that his stepson had just took one of the guy's money out of the neighborhood. And [Chris] said he would take care of it." After their conversation, Alvin then drove back to defendant's residence. Several people from the neighborhood were standing outside. A group of three to four teenage girls, including the victim's cousins, were pushing a baby stroller holding the victim, Amias Robinson.

Alvin testified that while he was in the driveway of defendant's residence, he saw a blue Oldsmobile drive past them. Shariff also testified that "J.D.'s car came down the street." Randy pointed out the vehicle and stated, "[t]here he go right

there." Shariff testified that Randy's comment meant, "[t]hat those are the people that took my money."

Defendant was standing at the end of the driveway when he pulled a gun from his rear waistband area. Alvin and Shariff witnessed defendant start firing shots "up the street" towards J.D.'s vehicle. Alvin heard approximately ten shots and then heard a girl scream "[y]ou shot my cousin; you shot my cousin." Defendant repeatedly stated "I'm going to jail" and Randy asked defendant, "[w]hy did you start shooting[?]" Shariff testified that, after the shooting, defendant stated, "I f***ed up." Thereafter, defendant walked quickly down the street and returned within a couple of minutes without a gun. Alvin left the scene in his vehicle soon after the shooting.

Sergeant Michael Abbondanza with the Charlotte Mecklenburg Police Department ("CMPD") testified that, on 12 August 2010, he was dispatched in response to a call that a baby had been shot and was the first officer to arrive on the scene. Sergeant Abbondanza testified that, when he arrived at a residence on Eastbrook Road, there were fifteen to twenty people in the street. Thereafter, he found the victim lying on the front porch with what appeared to be a gunshot wound through his neck.

The victim of the stray bullet, Amias Robinson, was born on 8 July 2008. In August 2010, Amias' mother had made arrangements with her cousins to watch Amias in Charlotte, North Carolina. She received a phone call on 12 August 2010, urging her to go to the hospital because Amias had been shot after he had been taken to the "Candy Lady." Amias died on 16 August 2010 as the result of a gunshot wound to the neck.

Todd Norhoff, an expert in the field of firearms and tool mark analysis with the Charlotte-Mecklenburg Crime Laboratory, testified that he analyzed eleven (11) spent shell casings found at the scene of the crime. The casings were 9 millimeter Luger Remington Peters casings. All eleven casings were found to have been discharged from the same firearm.

Defendant testified on his own behalf. On 12 August 2010, defendant lived with his grandmother, the "Candy Lady," at 5826 Eastbrook Road. Defendant picked up Randy and Alvin and went to defendant's residence to play video games. Around 5:00 p.m. or 6:00 p.m., the three went outside and stood in the driveway, waiting on someone to bring them marijuana. The "weed man" came by defendant's residence, sold them $80.00 worth of marijuana, and left. Defendant testified that he gave Randy half of the marijuana and then went inside his house, leaving Randy and

Alvin outside. Defendant was inside the house with his baby's mother, uncle, grandmother, and grandfather. Twenty-five minutes later, defendant testified that he heard 10 gunshots. He had not seen Randy or Alvin during this period of time. After he heard the gunshots, defendant, his baby's mother, uncle, grandmother, and grandfather met at the front door of the house. Defendant's grandmother saw the victim bleeding and started to perform CPR on the victim.

Defendant testified that earlier that day, he had had a conversation with Shariff. Shariff told defendant that he had been robbed by J.D. Defendant tried to call J.D. to get Shariff's money back but because J.D. did not answer his phone calls, defendant sent him a text message that read "Man, I ain't about to be blowing up your phone like a b****. Bring that n***** money back or stay out of my hood." Defendant denied shooting a gun at J.D., shooting a gun at J.D.'s vehicle, or shooting a gun "up in the air or down on the ground to scare J.D."

Testimony from the following witnesses demonstrated that they had initially implicated Alvin Alexander as the shooter: Shariff Baker; Porchia Glenn; Kyshonna Williams; and Kourtney Williams.

On 29 May 2013, the jury returned a verdict finding defendant guilty of first degree murder. The trial court sentenced defendant to life imprisonment without parole.

Defendant gave notice of appeal in open court.

## II. Discussion

On appeal, defendant argues that the trial court erred by (A) allowing the admission of testimony about 9 millimeter ammunition and a gun found in defendant's grandmother's house; (B) not ordering a mistrial after a profane outburst from the victim's father in the presence of the jury; (C) releasing an out-of-state witness from his subpoena and forcing defense counsel to elect whether to call the witness with only a few hours' notice; (D) refusing defendant's request to instruct the jury concerning flight as an indication of the guilt of another person; and (E) allowing the admission of inadmissible hearsay and cumulative evidence consisting of a witness' self-serving statements implicating defendant.

### A. Weapon and Ammunition Testimony

In his first argument on appeal, defendant contends that the trial court erred by allowing the admission of testimony concerning 9 millimeter ammunition and a gun found during the search of defendant's house. Specifically, defendant argues

that the challenged evidence was not relevant, in violation of Rule 401 of the North Carolina Rules of Evidence. Defendant also asserts that, if the evidence was relevant, the prejudice to defendant outweighed the probative value of the evidence under Rule 403 of the North Carolina Rules of Evidence. We disagree.

"The admissibility of evidence is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated." *State v. Griffin*, 136 N.C. App. 531, 550, 525 S.E.2d 793, 806 (2000) (citation and quotation marks omitted); *see also* N.C. Gen. Stat. § 8C-1, Rule 401 (2013) ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules. Evidence which is not relevant is not admissible." N.C. Gen. Stat. § 8C-1, Rule 402 (2013). Nevertheless, under Rule 403, relevant evidence "may be excluded

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2013).

> Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the "abuse of discretion" standard which applies to rulings made pursuant to Rule 403.

*Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (internal quotations and citation omitted).

At trial, a hearing was held prior to admission of the challenged evidence. Detective Miguel Santiago, a witness for the State, found a 9 millimeter machine-gun style pistol during a search of defendant's home. The gun had nineteen (19) Winchester 9 millimeter bullets and fifteen (15) Remington 9 millimeter bullets. The State wanted to introduce evidence regarding the 9 millimeter ammunition that was found at

defendant's house to show that defendant possessed the same caliber and brand of ammunition as the shell casings that had been found at the crime scene and were used to kill the victim. The State did not intend to introduce the 9 millimeter gun. Over defendant's objection, the trial court allowed the State to present the following evidence about the 9 millimeter ammunition found in the house:

> [State:] . . . Did you assist with executing a search warrant on [defendant's] home on October 27th, 2010?
>
> [Santiago:] Yes, I did.
>
> [State:] And yes or no, Detective, during that search, did you find any 9 millimeter ammunition?
>
> [Santiago:] Yes, I did.

In order to dispel any suggestion that defendant possessed the 9 millimeter gun used in the shooting, defendant elicited testimony that a 9 millimeter gun also found in his house, in which the 9 millimeter ammunition was found, was not the murder weapon. Thereafter, based on a trial court ruling that defendant had "opened the door", on re-direct the State introduced further evidence concerning the gun found in the house, including photographs. Defendant later testified that he only owned the 9 millimeter gun found during the search.

After thoughtful review, we hold that the evidence concerning the 9 millimeter ammunition that was found in defendant's home was relevant because it tended to link defendant to the scene of the crime, where eleven shell casings of the same brand and caliber were found, thus allowing the jury to infer that defendant was the perpetrator of the crime. Because evidence of the 9 millimeter ammunition was probative of defendant's connection to the crime and the danger of unfair prejudice did not outweigh the probative value of the evidence, we hold that the trial court did not err by admitting this evidence.

Next, we address the admission of evidence regarding the gun that was found pursuant to a search of defendant's home. We note that the trial court ruled that evidence of the gun found in defendant's home would not be admissible. However, defendant "opened the door" to the admission of this evidence. "The State has the right to introduce evidence to rebut or explain evidence elicited by defendant although the evidence would otherwise be incompetent or irrelevant." *State v. Johnston*, 344 N.C. 596, 605, 476 S.E.2d 289, 294 (1996) (citation omitted). "The law has long been that, even where [t]he type of testimony is not allowed[,] . . . when a party first raises an issue, it opens

the door to questions in response to that issue and cannot later object to testimony regarding the subject raised." *State v. Wilson*, 151 N.C. App. 219, 226, 565 S.E.2d 223, 228 (2002) (citations and quotation marks omitted). Since he first introduced evidence about the gun found in his residence, defendant cannot now challenge the admission of testimony that he first elicited. Defendant's arguments are overruled.

### B.  Mistrial

In his second argument on appeal, defendant contends that the trial court erred by failing to declare a mistrial after an outburst by the victim's father in the presence of the jury.

During the testimony of Sergeant Abbondanza of the CMPD describing the victim's injuries, the victim's father, stated "[m]otherf***** -- my baby. You shot my mother f***** baby – (unintelligible)." Shortly thereafter, as the court concluded for the day, the trial judge addressed the jury concerning the outburst:

> Finally, I can't let go -- or can't let it go without saying something about the outburst of the gentleman a moment ago. If you'll recall before we started, I said, you know, this is when we start; this is when we end; that these trials take on a life of their own. We're dealing with -- this is not television. These are the real facts and real tragedies. He clearly was emotional. But it's your responsibility as

> a juror and as a finder of fact to base your decision on the law and on the evidence and not on emotion. I don't know whether this gentleman will be back. I can promise you if he is back, he will not act like that again in this courtroom.

The following morning, the trial judge again addressed the issue with the jury at the request of the defense.

> We're going to start in just a moment with the cross-examination of this witness by the defendant. But I do have one final instruction for you concerning the incident that occurred yesterday afternoon. I'm not sure exactly what Mr. Robinson said. But regardless of what he said or what you may have thought he said or remember him to have said, that is not evidence and should not be considered by you as evidence and should have no bearing upon your deliberations.

Defendant concedes in his brief that "defense counsel failed to seek a mistrial" and thus contends that the proper standard of review is plain error. The North Carolina Supreme Court has restricted review for plain error to issues "involv[ing] either errors in the trial judge's instructions to the jury or rulings on the admissibility of evidence." *State v. Cummings*, 346 N.C. 291, 314, 488 S.E.2d 550, 563 (1997) (citation omitted). Because plain error review is not available to defendant, this issue is not properly preserved for appeal. *See State v. McCall*, 162 N.C. App. 64, 70, 589 S.E.2d 896, 900 (2004) (where the defendant failed to move for a mistrial after

individuals in the courtroom signaled to the victim during her testimony, plain error review was not available and the argument was waived).

### C. Defendant's Sixth Amendment Rights

Defendant next argues that the trial court erred by releasing an out-of-state witness, Shariff Baker, from his subpoena, forcing the defense to elect whether to call him as a witness with only a few hours' notice. Specifically, defendant argues that the trial court violated his confrontation rights as secured by the Sixth Amendment of the United States Constitution and Article I Section 23 of the North Carolina Constitution. We find defendant's arguments meritless.

Defendant relies on *State v. Barlowe*, 157 N.C. App. 249, 578 S.E.2d 660 (2003) to support his argument. Our Court in *Barlowe* stated the following:

> The right to present evidence in one's own defense is protected under both the United States and North Carolina Constitutions. As noted by the United States Supreme Court . . . [t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process. In addition, the right to face one's accusers and witnesses with other testimony is guaranteed by the sixth

> amendment to the federal constitution, applicable to the states through the fourteenth amendment, and by Article I, sections 19 and 23 of the North Carolina Constitution.

*Id.* at 253, 578 S.E.2d at 663 (citations and quotation marks omitted).

"The standard of review for alleged violations of constitutional rights is *de novo*. Once error is shown, the State bears the burden of proving the error was harmless beyond a reasonable doubt." *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009) (citing *State v. Tate*, 187 N.C. App. 593, 599, 653 S.E.2d 892, 897 (2007) and N.C. Gen. Stat. § 15A-1443(b)).

In the case *sub judice*, the State, pursuant to N.C. Gen. Stat. § 15A-811 et seq., summoned Shariff Baker from New York to testify at the trial. On 22 - 23 May 2013, Baker testified and defendant had an opportunity to cross-examine him. After Baker stepped down from the witness stand, the State informed the trial court judge that the defense had attempted to serve a subpoena on Baker the day before. The State argued that the subpoena was invalid. Baker refused to speak with the defense out-of-court and the trial court required the defense to decide whether to call Baker as a witness before 2:00 p.m. that day.

When the defense indicated it had not yet decided whether it would be calling Baker as a witness at 2:00 p.m., the trial court judge released Baker from the summons.

After reviewing the record, we are unable to agree with defendant that his confrontation rights regarding the State's witness, Shariff Baker, were violated. Baker was available at trial and defendant had the opportunity to conduct a cross-examination of Baker. Moreover, we note that Baker was summoned as an out-of-state witness by the State. Pursuant to N.C. Gen. Stat. § 15A-814,

> [i]f a person comes into this State in obedience to a summons directing him to attend and testify in this State he shall not, while in this State pursuant to such summons, be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this State under the summons.

N.C. Gen. Stat. § 15A-814 (2013). Thus, the subpoena served upon Baker during trial was invalid because Baker was in North Carolina pursuant to the State's summons. As such, we hold that the trial court did not err by releasing Baker from his summons after he testified as a witness for the State. Based on the foregoing reasons, we reject defendant's contentions.

D. Jury Instruction Concerning Flight

In the fourth issue raised by defendant on appeal, defendant argues that the trial court erred in refusing his request to instruct the jury concerning flight as an indication of Alvin Alexander's guilt. Defendant contends that the failure of the trial court to deliver the requested instruction concerning flight was a violation of his constitutional rights pursuant to the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, Sections 18, 19, 24, and 27 of the North Carolina Constitution.

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo*, by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citation omitted).

In the present case, Alvin testified that he left the scene of the crime after the shooting because he "didn't want to be around when the police showed up" since he was in possession of "crack." The defense requested a special instruction concerning the flight of Alvin from the crime scene. The trial court denied the request for the instruction, but allowed the defense to argue the point.

Defendant now argues that the trial court should have delivered an instruction concerning the flight of Alvin as an

indication of his guilt. Defendant contends that the evidence at trial suggested that Alvin "might have been the shooter" and that his flight from the scene of the crime "in fear of the police is particularly incriminating."

It is well established that "[e]vidence of a defendant's flight following the commission of a crime may properly be considered by a jury as evidence of guilt or consciousness of guilt." *State v. King*, 343 N.C. 29, 38, 468 S.E.2d 232, 238 (1996) (citation omitted).

Assuming *arguendo* that it was error for the trial court to refuse to instruct the jury that it would consider Alvin's flight as evidence that he, rather than defendant, was the perpetrator of the crime, we do not believe that this decision amounted to prejudicial error. According to N.C. Gen. Stat. § 15A-1443(a), "[a] defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2013).[1]   Here, the record is

_____

[1]Although defendant argues in his brief that his constitutional rights were violated, he failed to advance any constitutionally based arguments in support of his request for the delivery of a

replete with evidence from which a jury could find defendant guilty of first degree murder. At trial, several witnesses testified that defendant fired the shots that resulted in the victim's death. Witnesses also testified that defendant made highly incriminating statements after the shooting. On the other hand, although several witnesses initially told officers that Alvin fired the shots that killed the victim, the testimony at trial was devoid of any direct evidence tending to show that Alvin was the perpetrator of the crime. In addition, despite the fact that Alvin testified that he left the scene of the crime after the shooting because he had drugs on his person, he testified that he returned after learning that officers were searching for him. Based on the foregoing, we are unable to hold that there is a reasonable possibility that a different result would have been reached at trial had the trial court delivered defendant's requested third party flight instruction. Therefore, we find no prejudicial error.

E. Admission of Alvin Alexander's Testimony

---

third party flight instruction before the trial court. Because our Court does not consider constitutional issues raised for the first time on appeal, *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) (stating that "a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal"), we apply the applicable prejudice standard applicable to non-constitutional errors to defendant's claim.

In the final issue that he has raised on appeal, defendant argues that the trial court erred by admitting evidence of phone calls made by Alvin Alexander to his friends which were "self-serving statements implicating defendant." Defendant argues that this evidence amounted to hearsay and was cumulative. We disagree.

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2013). Hearsay is not admissible. N.C. Gen. Stat. § 8C-1, Rule 802 (2013). The trial court's determination about whether an out-of-court statement constitutes hearsay is reviewed *de novo*. *State v. Miller*, 197 N.C. App. 78, 87-88, 676 S.E.2d 546, 552 (2009). The trial court's determination concerning whether there is a "needless presentation of cumulative evidence" pursuant to Rule 403 of the North Carolina Rules of Civil Procedure is reviewed for an abuse of discretion. *State v. Jacobs*, 363 N.C. 815, 823, 689 S.E.2d 859, 864 (2010).

The challenged evidence, which consisted of recordings of phone calls made by Alvin while he was in jail, was admitted during Alvin's testimony. The substance of the recordings

indicated that Alvin did not shoot at the vehicle and that defendant was the shooter on 12 August 2010.

Defendant argues that Alvin's credibility was a key issue at trial and that allowing the tapes to bolster his testimony was prejudicial to defendant. Without the repeated statements by Alvin, defendant argues that the jury could have reached a different result.

After conducting *de novo* review of the challenged evidence, we hold that the recordings of Alvin's conversations did not amount to hearsay. In order to constitute hearsay, it must be "[a]n assertion of one other than the presently testifying witness" and must be offered for the truth of the matter asserted. *State v. Sibley*, 140 N.C. App. 584, 587-88, 537 S.E.2d 835, 838 (2000) (citation omitted). In the case *sub judice*, the recordings were admissible for the non-hearsay purpose of corroborating Alvin's testimony, which means that they were not used for the truth of the matter asserted. In addition, the recordings were not a needless presentation of cumulative evidence because the statements Alvin made in the recordings corroborated his testimony, excluded him as a suspect, and established defendant as the perpetrator of the crime. For these reasons, we are unable to hold that the trial

court abused its discretion by admitting the challenged testimony as a needless presentation of cumulative evidence.

### III. Conclusion

Based on the reasons discussed above, we find no error in part and no prejudicial error in part.

Judges ERVIN and DILLON concur.