An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-853

Filed 3 September 2025

Alamance County, No. 23 CRS 000197

STATE OF NORTH CAROLINA

v.

TY'SHAUN BOOKER, Defendant.

Appeal by Defendant from judgments entered 25 January 2024 by Judge David T. Lambeth, Jr., in Alamance County Superior Court. Heard in the Court of Appeals 12 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Stuart M. Saunders, for the State.*

> *Q. Byrd Law, by Quintin D. Byrd, for Defendant.*

GRIFFIN, Judge.

Defendant Ty'Shaun Booker appeals from the trial court's judgment entered upon a jury verdict finding him guilty of numerous firearms related offenses. Defendant contends the trial court erred by allowing officer testimony about a debunked self-defense theory. Defendant argues the officer lacked personal knowledge of the validity of the self-defense theory. We hold the trial court did not

err.

## I. Factual and Procedural Background

This case arises from a shooting in Burlington, North Carolina. The evidence presented at trial tended to show the following:

On 7 March 2023, a shooting occurred at the home of Shantana Clark, Defendant's mother. On the morning of 7 March 2023, Junneka Bethune, the woman who was shot at, overheard her son Tyleek Lewis arguing on the phone and mentioning Defendant's name. Bethune decided to take Tyleek and her other son, Jahmony Lewis, to Clark's home because she did not have Clark's phone number. Bethune previously spoke to Clark on occasion because of an existing friendship between her sons and Defendant. When Bethune arrived at Clark's home, she saw a person she identified as "Yusef" in a mask and gloves outside the home. She then saw two other people, one of which was Defendant, come around the corner of Clark's house. Defendant then shot at Bethune's vehicle multiple times. Bethune identified Defendant based on his voice after she heard him shouting "blow, blow, blow." After being shot at, Bethune drove home and called 911.

Sergeant Cody Westmoreland and Officer Thomas Staley responded to the initial 911 call at Bethune's house. After arriving at her home, Officer Staley examined several bullet holes in Bethune's car. Staley noted most of the bullet holes arched inward with one arching outward. Later, at Clark's home, Sergeant Westmoreland viewed video footage of the incident from a camera attached to the

home.

On 27 March 2023, Defendant was indicted on three counts of Attempted First Degree Murder, six counts of Discharging a Firearm Into an Occupied Vehicle In Operation, and one count of Discharging a Firearm Into an Occupied Dwelling. Defendant's matter came on for trial on 13 November 2023 in Alamance County Superior Court.

At trial, Sergeant Westmoreland noted the initial theory was that Clark's home was shot at. However, that theory was later debunked. Sergeant Westmoreland was unsure about why the theory changed when he testified at trial. In contrast, Defendant testified he saw a firearm being pointed at him from the back window of Bethune's vehicle prior to shooting at the vehicle.

Defendant objected to Sergeant Westmoreland's testimony on the grounds that he was unable to provide foundation as to how the theory was debunked, and moved to strike the testimony for speculation. Specifically, Sergeant Westmoreland testified during cross-examination:

> Q. So it was your understanding that bullets were also shot at her home?
>
> A. Initially that was the initial thought process, yes, sir.
>
> Q. Okay.
>
> REDIRECT EXAMINATION BY [THE STATE]
>
> Q. That initial thought process was debunked at some point, wasn't it?

A. Yes.

RECROSS EXAMINATION BY [DEFENDANT]

Q. Who debunked it?

A. So it was my –

Q. I just want to know who debunked it.

A. I do not know who debunked it.

The trial court overruled the objection and allowed the State to continue questioning. During subsequent questioning by the State, Sergeant Westmoreland stated he was a party to a conversation between Sergeant Drew Gerringer and Clark, where he learned the information that led him to believe the theory had been debunked. Defendant again objected on the grounds that Sergeant Westmoreland had not established foundation as to who debunked the self-defense theory and moved to strike for speculation. The motion was overruled by the trial court.

On 25 January 2024, the jury found Defendant guilty on three counts of Attempted First Degree Murder, and six counts of Discharging a Firearm Into an Occupied Vehicle In Operation. Defendant timely appeals.

## II.    Analysis

Defendant contends the trial court erred by allowing Sergeant Westmoreland's testimony about Defendant's self-defense theory being debunked by an unidentified police department official. Defendant argues the trial court should not have allowed Sergeant Westmoreland to testify about the debunked theory because Westmoreland

lacked personal knowledge of the validity of the theory.

"The admissibility of evidence at trial is a question of law and is reviewed *de novo*." *State v. Hicks*, 241 N.C. App. 345, 350, 772 S.E.2d 486, 490 (2015). Under *de novo* review, "we consider the matter anew and freely substitute our judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation modified). "'The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission.'" *State v. Anderson*, 200 N.C. App. 216, 220, 684 S.E.2d 450, 454 (2009) (quoting *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987)).

We have held "[e]liciting the same or similar contested evidence on cross-examination waives the right to challenge the admission of that evidence on appeal." *State v. McCutcheon*, 281 N.C. App. 149, 152, 867 S.E.2d 572, 576 (2021) (citing *State v. Wingard*, 317 N.C. 590, 599, 346 S.E.2d 638, 644 (1986)). Moreover, when a defendant invites error, they are not entitled to appellate review concerning the matter. *State v. Grappo*, 271 N.C. App. 487, 490, 845 S.E.2d 437, 439 (2020).

Defendant's questioning of Sergeant Westmoreland at trial opened the door to the challenged testimony. *See State v. Belfield*, 144 N.C. App. 320, 324, 548 S.E.2d 549, 551 (2001) (holding that a party is barred from raising an issue on appeal if they first "open the door" by asking questions directly related to the challenged testimony). *See generally State v. Royster*, 237 N.C. App. 64, 763 S.E.2d 577 (2014) (holding that because the defendant first introduced evidence related to a weapon found in his

residence, he cannot then challenge testimony that he first elicited). Defendant asked, "[d]id you take a look at Ms. Clark's house at all? The outside of Ms. Clark's home at all?" to which Westmoreland responded affirmatively. Westmoreland stated this was because they were advised of a shooting call at Clark's home. Defendant then asked, "[s]o it was your understanding that bullets were also shot at her home?" Westmoreland responded, "[i]nitially that was the initial thought process, yes, sir." This line of questioning is directly related to the self-defense theory argued by Defendant. Asking these questions opened the door for the State to inquire about his knowledge of the theory, and as such the trial court was correct in overruling Defendant's objections.

Defendant asserts Sergeant Westmoreland lacked any personal knowledge of the validity of Defendant's self-defense claim and therefore his testimony was speculation. This is unsupported by the record. Sergeant Westmoreland testified he was a party to a conversation between Clark and Sergeant Gerringer, in which he learned information which led him to rethink their initial theory of Clark's home being shot at. Further, Westmoreland directly participated in the investigation of the alleged bullet holes on the exterior of Clark's home, thus providing personal knowledge.

As such, the trial court did not err by allowing Detective Westmoreland to testify about Defendant's self-defense theory being debunked. Accordingly, Defendant's argument is without merit.

### III.    Conclusion

We hold the trial court did not err in denying Defendant's motion to strike the testimony.

NO ERROR.

Judges GORE and STADING concur.

Report per Rule 30(e).